UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SUSAN CLARK,
for Herself and/or On Behalf Of All
Others Similarly Situated,

Plaintiff,

v.

EDDIE BAUER LLC; and
EDDIE BAUER PARENT LLC,

Defendants.

No. 2:20-cv-1106-JCC

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

NOTE ON MOTION CALENDAR:
FRIDAY, OCTOBER 16, 2020

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................... 1

II. FACTUAL AND PROCEDURAL HISTORY ..................................................... 1

III. PLAINTIFF MAY SEEK EQUITABLE RELIEF ................................................ 2

    A.  Ms. Clark May Seek Injunctive Relief. ................................................ 2

    B.  Ms. Clark May Seek Restitution. ........................................................... 3

IV. THE COURT HAS SUBJECT MATTER JURISDICTION ............................... 5

    A.  Ms. Clark Has Standing To Seek Her Claims For Monetary
        Relief. ........................................................................................................ 5

        1.  Eddie Bauer's Return Policy Does Not Allow Ms.
               Clark to Obtain a Refund for Either of Her Two
               Purchases. ............................................................................... 6

        2.  Ms. Clark has Standing to bring her Monetary
               Relief Claims Because her Claims Remained
               Unpaid when she Filed her Lawsuit. ..................................... 6

    B.  Ms. Clark's Monetary Claims Are Not Moot. ...................................... 9

    C.  Ms. Clark Has Standing To Seek Injunctive Relief. ........................... 9

        1.  Eddie Bauer's Price Advertisements Still Violate
               the UTPA. ................................................................................ 10

        2.  The Price Tags of the Outlet Store Products that
               Originated from Eddie Bauer's Retail Stores (i.e.,
               Items on the "Clearance" Racks) Also Continue to
               Advertise False List Prices. ................................................... 11

        3.  Eddie Bauer has Failed to Meet the Stringent
               Standard for "Voluntary Cessation." .................................... 12

V.  PLAINTIFF SUFFICIENTLY PLEADED HER OREGON UTPA CLAIM ................ 13

    A.  Rule 12(b)(6) Standard. .......................................................................... 13

    A.  Ms. Clark's UTPA Claim Satisfies Rule 9(b)'s Pleading
        Requirements. .......................................................................................... 14

        1.  Ms. Clark Pleaded the "Who, What, When, Where,
               and How" of Eddie Bauer's Misconduct. ........................... 14

        2.  Ms. Clark's Pre-Suit Investigation Far Surpasses
               What Rule 9(b) Requires. ...................................................... 16

    B.  Ms. Clark Has Alleged An Ascertainable Loss. .................................. 18

        1.  Ms. Clark has Established Ascertainable Loss in the
               Purchase Price of the Products. ............................................. 19

        2.  Ms. Clark has Established an Ascertainable Loss in
               the "Loss of the Value of the Advantageous Bargain
               Promised." ............................................................................... 19

        3.  Eddie Bauer's Ascertainable Loss Arguments are
               Meritless. ................................................................................ 20

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS - ii
20-CV-1106-JCC

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

C.    Ms. Clark's UTPA Claim Is Within The Statute Of Limitations.........................................................23

VI.    CONCLUSION .................................................................24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

# TABLE OF AUTHORITIES

**CASES**

*Am. Life Ins. Co. v. Stewart,*
    300 U.S. 203 (1937) ...................................................................................2

*Becker v. Skype Inc.,*
    2014 WL 556697 (N.D. Cal. Feb. 10, 2014) ...........................................7

*Bell Atlantic. Corp. v. Twombly,*
    550 U.S. 544 (2007) .................................................................................13

*Bodin v. B. & L. Furniture Co.,*
    42 Or. App. 731 (1979) ...........................................................................24

*Calderon v. Kate Spade & Co., LLC,*
    2020 WL 1062930 (S.D. Cal. Mar. 5, 2020) ...........................................4

*Campbell-Ewald Co. v. Gomez,*
    136 S. Ct. 663 (2016) .........................................................................7, 8, 9

*Camreta v. Greene,*
    563 U.S. 692 (2011) ...................................................................................5

*Chen v. Allstate Ins. Co.,*
    819 F.3d 1136 (9th Cir. 2016) ..............................................................9, 21

*Davidson v. Kimberly-Clark Corp.,*
    889 F.3d 956 (9th Cir. 2018) ................................................................2, 11

*Davis v. Fed. Election Comm'n,*
    554 U.S. 724 (2008) ...................................................................................5

*Denson v. Ron Tonkin Gran Turismo, Inc.,*
    279 Or. 85 (1977) .....................................................................................22

*Fisher v. Eddie Bauer LLC,*
    2020 WL 4218228 (S.D. Cal. Feb. 3, 2020) ...........................................12

*Hamilton v. Gen. Mills, Inc.,*
    2016 WL 4060310 (D. Or. July 27, 2016) ................................................8

*Harris v. PFI W. Stores, Inc.,*
    2020 WL 3965022 (C.D. Cal. Apr. 9, 2020) ............................................7

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

*Hinojos v. Kohl's Corp.,*
    718 F.3d 1098 (9th Cir. 2013) ..............................................................5, 22

*Lamuth v. Hartford Life & Acc. Ins. Co.,*
    30 F. Supp. 3d 1036 (W.D. Wash. 2014) ...........................................12

*Lawrence v. FCA US LLC,*
    2017 WL 6940513 (C.D. Cal. Sept. 12, 2017) ......................................7

*Lepkowski v. CamelBak Prod., LLC,*
    2019 WL 6771785 (N.D. Cal. Dec. 12, 2019) .......................................7

*Luman v. Theismann,*
    647 F. App'x 804 (9th Cir. 2016) ...............................................6, 7, 8

*Main v. Gateway Genomics, LLC,*
    2016 WL 7626581 (S.D. Cal. Aug. 1, 2016) .........................................7

*Mathies v. Hoeck,*
    284 Or. 539 (1978) .................................................................................23

*Mendoza v. Lithia Motors, Inc.,*
    2017 WL 125018 (D. Or. Jan. 11, 2017) .............................................24

*Nemykina v. Old Navy, LLC,*
    2020 WL 2512884 (W.D. Wash. May 15, 2020)..............................14, 15

*Nguyen v. Cree, Inc.,*
    2019 WL 6917887 (D. Or. Dec. 17, 2019) ............................................7

*Nunez v. Saks Inc.,*
    771 F. App'x 401 (9th Cir. 2019) ........................................................14

*Pearson v. Philip Morris, Inc.,*
    358 Or. 88 (2015)..................................................................2, 4, 13, 21

*Philips v. Ford Motor Co.,*
    726 F. App'x. 608 (9th Cir. 2018) .........................................................3

*Reid v. Johnson & Johnson,*
    780 F.3d 952 (9th Cir. 2015)..................................................................5

*Rubenstein v. Neiman Marcus Grp. LLC,*
    687 F. App'x 564 (9th Cir. 2017) .............................................5, 14, 16

*Safransky v. Fossil Grp., Inc.,*
    2018 WL 1726620 (S.D. Cal. Apr. 9, 2018) ........................................15

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

*Silva v. Unique Beverage Co., LLC,*
  2017 WL 4896097 (D. Or. Oct. 30, 2017) ................................................... 19

*Simon v. Carter's, Inc.,*
  Case No. 4:20-cv-01436-JSW (N.D. Cal. July 13, 2020) ............................ 3, 4

*Simonsen v. Sandy River Auto, LLC,*
  290 Or. App. 80 (2018) ............................................................................ 19, 22

*Singh v. Google LLC,*
  2020 WL 5202081 (9th Cir. Sept. 1, 2020) .................................................... 5

*Sonner v. Premier Nutrition Corp.,*
  971 F.3d 834 (9th Cir. 2020) .................................................................. 2, 3, 4

*Spann v. J.C. Penney Corp.,*
  2015 WL 1526559 (C.D. Cal. Mar. 23, 2015) ............................................. 2, 4

*Starr v. Baca,*
  652 F.3d 1202 (9th Cir. 2011) ..................................................................... 13

*Stathakos v. Columbia Sportswear Co.,*
  2016 WL 1730001 (N.D. Cal. May 2, 2016) ................................................ 15

*Stearns v. Select Comfort Retail Corp.,*
  763 F. Supp. 2d 1128 (N.D. Cal. 2010) ......................................................... 8

*Vinci v. Hyundai Motor Am.,*
  2018 WL 6136828 (C.D. Cal. Apr. 10, 2018) .............................................. 24

*Walters v. Vitamin Shoppe Indus., Inc.,*
  701 F. App'x 667 (9th Cir. 2017) ................................................................. 19

*Weigel v. Ron Tonkin Chevrolet Co.,*
  298 Or. 127 (1984) .................................................................................. 19, 22

**STATUTES**

ORS § 646.636 ..................................................................................................... 2

ORS § 646.638 ..................................................................................................... 4

ORS § 646.883 ................................................................................................... 10

ORS § 646.885 ................................................................................................... 10

**REGULATIONS**

OAR 137-020-0010 ........................................................................................... 22

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

## I. INTRODUCTION

Defendants Eddie Bauer LLC and Eddie Bauer Parent LLC ("Eddie Bauer") ask the Court to dismiss Plaintiff Susan Clark's Complaint. (Dkt. 16).

Eddie Bauer makes three principal arguments for why dismissal is appropriate. First, Eddie Bauer argues that Ms. Clark's requests for equitable relief should be dismissed because she has not alleged that she lacks an adequate remedy at law. Second, Eddie Bauer argues that Ms. Clark's claims should be dismissed for lack of subject matter jurisdiction. Specifically, Eddie Bauer argues that its return policy divests Ms. Clark of standing and moots her claims for monetary relief because she may obtain a refund for her purchases, and that Ms. Clark lacks standing to seek injunctive relief because Eddie Bauer added "Comparable Value" to the price tags of most of its Outlet Store products. Third, Eddie Bauer argues that Ms. Clark's Oregon Unfair Trade Practices Act ("UTPA") claim should be dismissed because it: failed to meet Rule 9(b)'s pleading requirements, failed to allege an ascertainable loss, and is time-barred. For the reasons explained below, all of Eddie Bauer's arguments are meritless.

## II. FACTUAL AND PROCEDURAL HISTORY

Ms. Clark alleges that on two separate occasions—March 22, 2017, and April 5, 2018—she visited an Eddie Bauer outlet store (hereinafter "Outlet Store" or "Outlet") in Oregon and purchased products which Eddie Bauer advertised with false discounts from false and inflated list prices (i.e., reference prices). Compl., ¶¶ 46–67. Based on Eddie Bauer's representations, Ms. Clark reasonably believed that the products she bought on sale were regularly offered and sold by Eddie Bauer at their higher advertised list prices. Compl., ¶¶ 50, 61. And, she reasonably believed that the advertised "sale" prices represented special discounts of "50% off" Eddie Bauer's normal selling prices for the products. Compl., ¶¶ 53, 63. In reality, Eddie Bauer had never offered the products at their respective higher list prices. *Id*. And, as such, Ms. Clark did not actually receive the discounts that Eddie Bauer represented and promised to her. Compl., ¶¶ 57, 67. In fact, the products were *always* offered at significant discounts from their advertised list prices. Compl., ¶ 56, 66.

Ms. Clark alleges a cause of action under Oregon law for a violation of the Oregon

Unlawful Trade Practices Act, § 646.605 *et seq*. Compl., ¶¶ 89–122. She seeks various forms of monetary and equitable relief, including a request for injunctive relief to enjoin Eddie Bauer from continuing to engage in unlawful false discount advertising practices. Compl., p. 26.

On July 17, 2020, Ms. Clark filed this class action against Eddie Bauer. *See* Complaint (Dkt. 1). And, on August 25, 2020, Eddie Bauer filed and served this Motion to Dismiss Plaintiff's Complaint ("Motion") (Dkt. 16).

## III.    PLAINTIFF MAY SEEK EQUITABLE RELIEF

A plaintiff seeking equitable relief must establish that no "plain, adequate, and complete remedy exists at law." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 845 (9th Cir. 2020). Significantly, "[a] remedy at law does not exclude one in equity unless it is equally prompt and certain and in other ways efficient." *Id.* at 845, n.8 (quoting *Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937)).

Eddie Bauer argues that Ms. Clark may not seek injunctive relief and restitution because she has failed to demonstrate that her remedies at law are inadequate or incomplete. *See* Motion at 5–6. As explained below, Eddie Bauer is wrong.

### A.    Ms. Clark May Seek Injunctive Relief.

The UTPA "is designed to encourage private enforcement of the prescribed standards of trade and commerce in aid of the act's public policies as much as to provide relief to the injured party." *Pearson v. Philip Morris, Inc.*, 358 Or. 88, 142 (2015). Accordingly, the UTPA specifically allows Ms. Clark to seek an injunction "as may be necessary to ensure cessation of unlawful trade practices." ORS § 646.636.

Courts routinely permit plaintiffs to seek *both* injunctive relief and damages in false advertising cases because no amount of damages for <u>past harms</u> can redress the threat of <u>future harm</u> in not knowing whether the defendant's advertisements are legitimate. *See*, *e.g.*, *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965–70 (9th Cir. 2018) (holding that the plaintiff in a false advertising case had alleged an economic injury and a threat of future injury and thus could seek both injunctive relief and damages); *Spann v. J.C. Penney Corp.*, 2015 WL 1526559, at *10 (C.D. Cal. Mar. 23, 2015) (same); *Simon v. Carter's, Inc.*, Case No. 4:20-cv-

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

01436-JSW, Dkt. 20 (N.D. Cal. July 13, 2020) (Order Denying Motion to Dismiss) (same). Ms. Clark alleges a threat of future injury in her Complaint, explaining that she "would shop at one of Eddie Bauer's Oregon Outlet Stores again if she could have confidence regarding the truth of Eddie Bauer's prices and the value of its products," but that she "will be harmed if, in the future, she is left to guess as to whether Eddie Bauer is providing a legitimate sale or not, and whether products are actually worth the amount that Eddie Bauer is representing." Compl., ¶¶ 75–76.

Citing *Sonner*, Eddie Bauer argues that "where a plaintiff seeks injunctive relief . . . courts routinely dismiss claims for such relief in light of prayers for statutory damages." Motion at 7. Eddie Bauer misstates *Sonner*—the plaintiff did not seek injunctive relief in *Sonner* at all; the plaintiff in that case was seeking only restitution. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 845 (9th Cir. 2020). And, the *Sonner* court only affirmed the dismissal of the plaintiff's request for restitution because she sought "<u>the same sum in equitable restitution as she [previously] requested in damages</u>" and "fails to explain how the same amount of money for the exact same harm is inadequate or incomplete." *Id.* (emphasis added). Ms. Clark's injunctive relief is "not the same amount of money for the exact same harm." Ms. Clark is seeking an injunction to prevent future harm, which money damages obviously cannot redress. *Sonner* is clearly inapposite.

Eddie Bauer likewise misstates *Philips v. Ford Motor Co.*, 726 F. App'x. 608, 609 (9th Cir. 2018) for the same proposition that the ability to obtain damages eliminates the right to obtain injunctive relief. In fact, *Philips* does not stand for this proposition at all. The court only found that the plaintiffs never explained *why* their legal remedies were inadequate; the court did not find the plaintiffs could never seek equitable remedies where a legal remedy existed. *See id*. Here, Ms. Clark has explained why her legal remedies are inadequate to redress her threat of future injury, and thus she has fulfilled the necessary pleading requirement to seek injunctive relief.

**B.     Ms. Clark May Seek Restitution.**

Under the UTPA, Ms. Clark may recover individually, and on behalf of class members,

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS - 3
20-CV-1106-JCC

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

"actual damages or statutory damages of $200, whichever is greater"; "punitive damages"; and "any equitable relief the court considers necessary or proper." ORS § 646.638(1), (8). Oregon courts have recognized several equitable remedies available to a plaintiff under the UTPA, including a full refund of the product's purchase price. *See Pearson v. Philip Morris, Inc.*, 358 Or. 88, 124–27 (2015).

Citing *Sonner*, Eddie Bauer argues that Ms. Clark cannot seek equitable monetary relief for the same injury for which she seeks damages. Motion at 7. This is incorrect. *Sonner* explains that a plaintiff cannot seek <u>the same amount of money</u> in restitution that she sought in damages. *See Sonner*, 971 F.3d at 845 (plaintiff first sought $32,000,000 in damages, and then changed her prayer for relief from damages to $32,000,000 in restitution). This is not what Ms. Clark is doing here. Ms. Clark has not specified a precise sum of monetary relief because it is unclear at this stage what dollar amount constitutes "adequate and complete" relief or what amount Ms. Clark can prove she and the class are entitled to. Rather, Ms. Clark has simply pleaded various <u>measures of monetary relief</u>—actual damages (which would be determined at trial), statutory minimum damages of $200, or some form of restitution such as a full refund of the product's purchase price.

"At this point in the litigation, Plaintiffs may plead alternate measures of damages." *Calderon v. Kate Spade & Co., LLC*, 2020 WL 1062930, at *8 (S.D. Cal. Mar. 5, 2020) (denying defendant's motion to dismiss plaintiffs' prayer for damages and restitution); *see also Spann v. J.C. Penney Corp.*, 2015 WL 1526559, at *9 (C.D. Cal. Mar. 23, 2015) (discussing various measurements of damages available to the plaintiff and explaining how equitable monetary relief could be greater than actual damages); *Simon v. Carter's, Inc.*, Case No. 4:20-cv-01436-JSW, Dkt. 20 (N.D. Cal. July 13, 2020) (Order Denying Motion to Dismiss) (same). Depending on what Ms. Clark proves later in the litigation, actual damages and statutory damages may be <u>less than</u> restitution, in which case, these remedies at law would be "inadequate and incomplete" compared to the available equitable remedy.

At this juncture, it is appropriate for the Court to permit Ms. Clark to plead all possible measures of damages. If, at a later time, it becomes clear that there is an adequate and complete

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

remedy at law, the Court can then dismiss Ms. Clark's claims for equitable monetary relief.

## IV.  THE COURT HAS SUBJECT MATTER JURISDICTION

"Article III restricts federal courts to the resolution of cases and controversies." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732 (2008). "That restriction requires that the party invoking federal jurisdiction have standing—the personal interest that must exist at the commencement of the litigation." *Id.* This "personal interest" requirement is to ensure that the case features a "concrete adverseness which sharpens the presentation of issues." *Camreta v. Greene*, 563 U.S. 692, 701 (2011). A plaintiff has Article III standing if she has: (1) "suffered an injury in fact," (2) that was caused by "the conduct complained of," and (3) that "will be redressed by a favorable decision." *Id.*

### A.  Ms. Clark Has Standing To Seek Her Claims For Monetary Relief.

"In a false advertising case, plaintiffs meet [Article III's] standing requirement if they show that, by relying on a misrepresentation on a product label, they paid more for a product than they otherwise would have paid, or bought it when they otherwise would not have done so." *Singh v. Google LLC*, 2020 WL 5202081, at *1 (9th Cir. Sept. 1, 2020) (citing *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015)); *see also Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 n.3 (9th Cir. 2013); *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 566 (9th Cir. 2017). Ms. Clark has met this standing requirement by alleging that she relied on Eddie Bauer's pricing and discount misrepresentations in making her purchases and, "if she had known the truth, she would not have purchased the products at the prices she paid." Compl., ¶¶ 70–71.

Eddie Bauer argues that Ms. Clark (and presumably every Eddie Bauer customer) lacks standing to seek monetary relief because Eddie Bauer has a return policy. *See* Motion at 9. Specifically, Eddie Bauer contends that Ms. Clark has not suffered an injury-in-fact because "Eddie Bauer's satisfaction guarantee return policy allows Plaintiff and any putative class member to return their purchases at any time" for a full refund. Motion at 10. Eddie Bauer's return policy argument does not hold water.

First, Eddie Bauer's argument is based on its old return policy that no longer exists—

Ms. Clark cannot obtain a refund under Eddie Bauer's current return policy. And second, even if Eddie Bauer's return policy were available to Ms. Clark, it still would not divest Ms. Clark of standing because a person must *actually have received* a full refund prior to commencing the lawsuit in order to lack standing. Ms. Clark has never received a refund and thus has standing to seek monetary relief.

### 1. Eddie Bauer's Return Policy Does Not Allow Ms. Clark to Obtain a Refund for Either of Her Two Purchases.

Eddie Bauer's entire refund argument is based on its old return policy that no longer exists. Eddie Bauer's new return policy since at least May 2019 only allows customers to return a product for a refund "within one year of purchase." (Ex. A to Request for Judicial Notice). And, absent proof of purchase, a customer may only receive store credit for half the original item price. *Id.* This new return policy is still in effect today. (Ex. B to Request for Judicial Notice). Thus, when Ms. Clark first learned of Eddie Bauer's false pricing practices on March 13, 2020, Eddie Bauer's published and posted return policy expressly prohibited her from obtaining a refund on her purchases, which had been made over two years ago.

Eddie Bauer may argue that, despite the apparent futility of seeking a refund, if Ms. Clark had nevertheless requested a full refund—even today—Eddie Bauer staff may have provided it to her. But, even if this *were* true, Eddie Bauer cites no caselaw that states a plaintiff does not have standing to sue unless they first make a seemingly futile attempt to obtain a refund on the off chance that the defendant agrees to provide one. Such a requirement would be absurd. Because Eddie Bauer's stated return policy since May 2019 clearly does not allow Ms. Clark to obtain a refund, Eddie Bauer's argument fails from the outset.

### 2. Ms. Clark has Standing to bring her Monetary Relief Claims Because her Claims Remained Unpaid when she Filed her Lawsuit.

A plaintiff satisfies the injury-in-fact requirement if her claim for monetary relief is unpaid at the time she brings her lawsuit. *Luman v. Theismann*, 647 F. App'x 804, 807 (9th Cir. 2016) ("Amkraut's individual claim for monetary relief was unpaid when he joined the lawsuit. Amkraut therefore satisfied the injury-in-fact requirement and had standing to sue.");

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

*see also Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 674 (2016) (Thomas, J., concurring) (explaining that, to eliminate a plaintiff's standing to sue, "a prospective defendant needed to . . . offer to pay the entire claim before a suit was filed, accompanied by actually producing the sum at the time of tender in an unconditional manner.") (internal quotations omitted). This is true even if the plaintiff could have received a full refund from the defendant upon request, but specifically avoided doing so—which is precisely what happened in *Luman*.

In *Luman*, the two plaintiffs, Luman and Amkraut, sent the defendant a pre-suit notice letter requesting the defendant to "correct, repair, replace or otherwise rectify the goods." *Luman v. Theismann*, 2014 WL 443960, at *2 (E.D. Cal. Feb. 4, 2014). Luman sent his letter before the lawsuit was filed and the defendant immediately issued him a full refund on his credit card. *Id.* The Ninth Circuit held that Luman lacked standing because he received a full refund <u>before the lawsuit was filed</u>. 647 F. App'x at 807. To prevent the defendant from "picking off" another plaintiff, Amkraut sent his letter on the same day that he joined the action. 2014 WL 443960, at *5. Again, the defendant immediately issued Amkraut a full refund on his credit card. *Id.* However, unlike Luman, <u>the Ninth Circuit held that Amkraut had standing to sue because he had not received a full refund prior to joining the lawsuit</u>. 647 F. App'x at 807. For standing purposes, the court's <u>only concern</u> was that Amkraut's claim for monetary relief remained unpaid at the time he joined the lawsuit.

Courts following *Luman* have held that a refund program and even a direct offer to provide complete relief to the plaintiff does not divest the plaintiff of standing unless the offer or refund is actually accepted. *See Lawrence v. FCA US LLC*, 2017 WL 6940513 (C.D. Cal. Sept. 12, 2017); *Main v. Gateway Genomics, LLC*, 2016 WL 7626581 (S.D. Cal. Aug. 1, 2016).

Eddie Bauer cites a number of cases for its refund policy argument. However, most of the cases are easily distinguishable because the plaintiffs received a full refund prior to the lawsuit being filed. *See Becker v. Skype Inc.*, 2014 WL 556697, at *1 (N.D. Cal. Feb. 10, 2014); *Nguyen v. Cree, Inc.*, 2019 WL 6917887, at *2 (D. Or. Dec. 17, 2019); *Harris v. PFI W. Stores, Inc.*, 2020 WL 3965022, at *3 (C.D. Cal. Apr. 9, 2020); *Lepkowski v. CamelBak Prod., LLC*, 2019 WL 6771785, at *1 (N.D. Cal. Dec. 12, 2019); *Stearns v. Select Comfort Retail*

1  *Corp.*, 763 F. Supp. 2d 1128, 1136 (N.D. Cal. 2010). Eddie Bauer even cites *Luman* and *Main*,

2  but misleadingly only references the plaintiff that received a refund and lacked standing—

3  Eddie Bauer completely ignores the plaintiff that did not receive a refund and was still found to

4  have standing. *See* Motion at 10, n. 4.

5      Eddie Bauer heavily relies on one particular case for its argument, *Hamilton v. Gen.*

6  *Mills, Inc.*, 2016 WL 4060310 (D. Or. July 27, 2016). However, *Hamilton* is both factually

7  distinguishable and was wrongly decided in light of *Luman* and *Campbell-Ewald*. In *Hamilton*,

8  one of the defendant's food shipments was accidently contaminated. *Id*. at *1. The defendant

9  admitted liability and worked together with the U.S. Food and Drug Administration to issue a

10  "widely-advertised voluntary recall and refund program" for the contaminated food. *Id*. The

11  plaintiff refused to participate in the recall/refund program and brought a lawsuit instead. *Id*.

12  The court held that "the defendant's offer of restitution for its recalled products mooted the

13  plaintiff's claims." *Id.* at *3–*4.

14      First, *Hamilton* is distinguishable on its facts. Eddie Bauer's false advertising is not a

15  one-off accident. And Eddie Bauer has not issued a "widely-advertised" recall/refund program,

16  where Eddie Bauer admits liability for its false advertising and affirmatively offers a full refund

17  to all of its deceived customers. Nor is Ms. Clark a lone, obstinate consumer who refuses to

18  accept a refund after liability has been admitted and reparations offered. Instead, Eddie Bauer is

19  basing its entire argument on its return policy that, on its face, does not even apply to Ms.

20  Clark's purchases. This is a far cry from informing all of its customers of its unlawful conduct

21  and affirmatively offering a refund as recompense.

22      Notwithstanding the factual distinctions, *Hamilton* is also not good law. The Ninth

23  Circuit made it clear that standing exists if the plaintiff's claim for monetary relief was unpaid

24  when he joined the lawsuit. *Luman*, 647 F. App'x at 807. And the United States Supreme Court

25  explained: "When a plaintiff rejects an offer—however good the terms—her interest in the

26  lawsuit remains just what it was before. And so too does the court's ability to grant her relief."

27  *Campbell-Ewald*, 136 S. Ct. at 670. Thus, when the plaintiff in *Hamilton* rejected the

28  defendant's offer of a full refund, he continued to suffer an injury-in-fact and therefore had

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS - 8
20-CV-1106-JCC

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

1    standing to sue.

2    Because Ms. Clark's monetary relief claims were unpaid at the time she filed the

3    lawsuit she had standing when she filed her action.

4        **B.    Ms. Clark's Monetary Claims Are Not Moot.**

5    Eddie Bauer argues that "Plaintiff's ongoing ability to return her purchases for a full

6    refund also moots her claims" because "[m]ootness applies when the opposing party offers the

7    plaintiff the refund she seeks." Motion at 11. First, Eddie Bauer's current return policy does not

8    allow Ms. Clark to obtain a refund on her purchases. Second, Eddie Bauer has never <u>offered</u>

9    Ms. Clark anything. Eddie Bauer simply argues that it has a general return policy that it claims

10   Ms. Clark could use to receive a refund.

11   Notwithstanding this, Eddie Bauer's argument also fails in light of controlling Ninth

12   Circuit and Supreme Court precedent. *See Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1145 (9th

13   Cir. 2016) ("a claim becomes moot once the plaintiff *actually receives* all of the relief to which

14   he or she is entitled on the claim.") (emphasis in original)); *Campbell-Ewald*, 136 S. Ct. at 672

15   ("an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case."). Every

16   case Eddie Bauer cites predates *Campbell-Ewald* and *Chen* and is therefore unpersuasive.

17   Because Ms. Clark has yet to receive any relief whatsoever, her monetary claims are not moot.

18   Moreover, because Ms. Clark brought a class action, even if she received complete

19   relief for her individual claims today, "a court should not enter judgment on the individual

20   claims . . . before the plaintiff has had a fair opportunity to move for class certification." *Chen*,

21   819 F.3d at 1147. This is to prevent defendants from "picking off" of potential class

22   representatives. *Id.*; *see also Campbell-Ewald*, 136 S. Ct. at 672.

23       **C.    Ms. Clark Has Standing To Seek Injunctive Relief.**

24   Eddie Bauer argues that Ms. Clark lacks standing to seek injunctive relief because

25   Eddie Bauer changed its outlet price tags in January 2020 to now include the phrase

26   "Comparable Value." *See* Motion at 8. Eddie Bauer asserts that this change divests Ms. Clark

27   of standing because the change purportedly means that its price discount advertising is *now*

28   compliant with the FTC and Eddie Bauer has "no intention to return to the previous price tags."

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS - 9
20-CV-1106-JCC

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

1  *Id.* Eddie Bauer's argument fails for the following reasons.

2            **1.**      **Eddie Bauer's Price Advertisements Still Violate the UTPA.**

3         Eddie Bauer's false discount advertisements continue to violate the UTPA. Under the

4  UTPA, "It shall be unlawful for a seller to include a price comparison in an advertisement

5  unless the seller clearly and conspicuously identifies in the advertisement the origin of the price

6  that the seller is comparing to the seller's current price." Pursuant to ORS § 646.885(2), if the

7  advertisement states terms such as "discount" or "___ percent discount" or "$____ off," and the

8  advertisement does not otherwise specify the origin of the price, then the law dictates that the

9  discount must reference (i.e., must be based on) the retailer's own former price.

10         Despite Eddie Bauer's claim to have changed its advertising practices, Eddie Bauer

11  continues to advertise "____ percent off" signs throughout its Outlet Stores and on nearly all

12  Outlet product racks—unchanged from the examples in the Complaint (see photos at Compl., ¶

13  24). The "xx% off" signs obviously violate the UTPA because Eddie Bauer has essentially

14  <u>admitted</u> in its Motion that the reference prices do not reference Eddie Bauer's own former

15  price as required by ORS § 646.885(2).

16         With regard to the tiny print "Comparable Value" language Eddie Bauer began printing

17  on its product price tags in January 2020—and assuming for the sake of argument that the

18  consumer noticed the language or somehow understood it to possibly mean something different

19  than Eddie Bauer's own former prices—that added "Comparable Value" language on the price

20  tags does not cure the violation of the UTPA. Pursuant to ORS § 646.885(2), Eddie Bauer

21  must identify the <u>origin</u> of the "Comparable Value" price—i.e., Eddie Bauer must identify the

22  particular product being compared to, and identify which retailer offered that product at that

23  price. Eddie Bauer's "Comparable Value" language (which is meanwhile not present on Eddie

24  Bauer's actual prominent and pervasive discount advertising itself such as on the ubiquitous

25  "xx% off" signage posted throughout the store and on all product racks) fails to do so and thus

26  does not cure Eddie Bauer's (continued) violations of the UTPA.[1]

27  -------------------------

28  [1] Further, compliance with this requirement must be "<u>established based on facts provable by the</u>
<u>seller</u>." ORS § 646.883(2) (emphasis added). Thus, even if Eddie Bauer properly identified the

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS - 10
20-CV-1106-JCC

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

Thus, absent an injunction, there is still "a sufficient likelihood that [Ms. Clark] will again be wronged in a similar way." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). As *Davidson* explains,

> Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations that she will be <u>unable to rely on the product's advertising or labeling in the future</u>, and so will not purchase the product although she would like to. In other cases, the threat of future harm may be the consumer's plausible allegations that <u>she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved</u>.

889 F.3d at 969–70 (emphasis added).

Ms. Clark is stuck between both of *Davidson*'s scenarios. Absent a court ordered injunction, Ms. Clark will be "unable to rely on the product's advertising in the future, and so will not purchase the product although she would like to." Alternatively, Ms. Clark could be injured if she gives Eddie Bauer the benefit of the doubt and makes a purchase in the future because she "reasonably, but incorrectly, assumes the product was improved."

To resolve the *Davidson* scenarios, Ms. Clark may seek an injunction that simply prohibits Eddie Bauer from advertising a list price that is false—whether it be a false former price or a false product-comparison price.

> **2.     The Price Tags of the Outlet Store Products that Originated from Eddie Bauer's Retail Stores (i.e., Items on the "Clearance" Racks) Also Continue to Advertise False List Prices.**

Ms. Clark purchased a product that was previously offered in Eddie Bauer's retail store and which Eddie Bauer advertised with a false and inflated list price (the Women's MicroTherm StormDown Hooded Jacket, color Purple Haze). Eddie Bauer says nothing about adding "Comparable Value" language to the price tags of its retail store products. Thus, even if

---

origin of the reference price (if it was something other than its own former price), Eddie Bauer would still need to provide factual evidence that the reference price was legitimate. Ms. Clark is highly skeptical that Eddie Bauer could provide such factual evidence that these prices legitimately reflect the price of some (unidentified) comparable product from an (unidentified) other retailer—especially given that Eddie Bauer appears to have simply added this "Comparable Value" language to its price tags without changing any of its other advertising and without even changing any of its products' list prices whatsoever.

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

the new pricing language cured its violation of the UTPA (which it does not), the Outlet "clearance" products coming from Eddie Bauer's retail stores still advertise false list prices in violation of the UTPA. Thus, Ms. Clark still faces a real threat of future harm if Eddie Bauer is allowed to continue advertising false list prices on these products.

### 3. Eddie Bauer has Failed to Meet the Stringent Standard for "Voluntary Cessation."

Eddie Bauer has not met the "heavy burden" of demonstrating that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Lamuth v. Hartford Life & Acc. Ins. Co.*, 30 F. Supp. 3d 1036, 1044 (W.D. Wash. 2014) (J. Coughenour). Even assuming *arguendo* that Eddie Bauer's new pricing language on its Outlet-exclusive product price tags cure its UTPA violations, there is still nothing preventing Eddie Bauer from returning to its prior practices. Eddie Bauer *still* engages in the exact same false price advertising in its retail stores. And Eddie Bauer continues to deny that its pricing practices are false in either its retail stores or Outlet Stores. There is nothing stopping Eddie Bauer from removing the "Comparable Value" language on its price tags. For example, if Eddie Bauer came to believe that this price tag change negatively impacts its sales, it would likely revert back to its original price tags without the Comparable Value language.

The fact that Eddie Bauer continues to engage in its false reference price advertising in its retail stores and on its website demonstrates that it has not turned over a new leaf or learned the error of its ways. In fact, in all likelihood, Eddie Bauer only made this price tag change in its Outlet Stores in reaction to a prior lawsuit which it privately settled earlier this year. In mid-2019, Eddie Bauer was sued for the exact same false pricing practices in its California Outlet Stores. *See Fisher v. Eddie Bauer*, Case No. 3:19-cv-00857-BEN-WVG (S.D. Cal. May 7, 2019). In early 2020, the court denied Eddie Bauer's motion to dismiss in its entirety. *See Fisher v. Eddie Bauer LLC*, 2020 WL 4218228 (S.D. Cal. Feb. 3, 2020). The parties then privately settled the case shortly afterwards.

Eddie Bauer also claims that it has "invested heavily in this change." But Eddie Baur simply added two more words to its price tags. This is hardly a "heavy investment." If Eddie

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

1  Bauer comes to believe that the "Comparable Value" language on its price tags harms its

2  profits, Eddie Bauer could easily remove those two words on any price tags Eddie Bauer prints

3  in the future. Because it is far from "absolutely clear" that Eddie Bauer will not engage in its

4  previous false reference price advertising (which it still engages in on its website, in its

5  mainline retail stores, and in its Outlet Stores regarding "clearance" rack items), Ms. Clark may

6  seek an injunction to ensure that Eddie Bauer cannot go back to its previous false price

7  advertising.

8  **V.      PLAINTIFF SUFFICIENTLY PLEADED HER OREGON UTPA CLAIM**

9          To establish an Oregon UTPA violation, a plaintiff must show that "(1) the defendant

10  committed an unlawful trade practice; (2) plaintiff suffered an ascertainable loss of money or

11  property; and (3) plaintiff's injury (ascertainable loss) was the result of the unlawful trade

12  practice." *Pearson v. Philip Morris, Inc.*, 358 Or. 88, 127 (2015). Additionally, a plaintiff must

13  bring her UTPA claim within one year of "discovery," i.e., when the plaintiff either "knows or

14  should have known of the allegedly unlawful conduct." *Id.* at 137.

15          Eddie Bauer argues that Ms. Clark's UTPA claim should be dismissed under Rule

16  12(b)(6) because her claim: fails to meet Rule 9(b)'s pleading requirements; does not allege an

17  ascertainable loss; and is outside the statute of limitations period. *See* Motion at 11.

18          Ms. Clark addresses each of these arguments in turn.

19  **A.      Rule 12(b)(6) Standard.**

20          Rule 12(b)(6) requires Ms. Clark to plead "enough facts to state a claim to relief that is

21  plausible on its face." *Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The

22  plausibility standard only requires the complaint to "raise a reasonable expectation that

23  discovery will reveal evidence to support the allegations." *Starr v. Baca*, 652 F.3d 1202, 1217

24  (9th Cir. 2011). Rule 9(b)'s pleading standard also applies here. "The standard under Rule 9(b)

25  is that fraud allegations must be specific enough to give defendants notice of the particular

26  misconduct . . . so that they can defend against the charge and not just deny that they have done

27  anything wrong . . . . Averments of fraud must be accompanied by 'the who, what, when,

28  where, and how' of the misconduct charged." *Nemykina v. Old Navy, LLC*, 2020 WL 2512884,

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

at *3 (W.D. Wash. May 15, 2020). Significantly, Rule 9(b) is also relaxed in false advertising cases, and a plaintiff must only identify "the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 567–68 (9th Cir. 2017).

### A. Ms. Clark's UTPA Claim Satisfies Rule 9(b)'s Pleading Requirements.

Eddie Bauer argues that Ms. Clark's UTPA claim fails to meet Rule 9(b)'s pleading requirements because she has not pleaded facts demonstrating that Eddie Bauer's price advertising is false or deceptive. *See* Motion at 14. Eddie Bauer also complains that Ms. Clark's pre-suit investigation is deficient to support her factual allegations. *See* Motion at 3, 16.

Ms. Clark has pleaded "the who, what, when, where, and how" of Eddie Bauer's misconduct and her factual allegations are specific enough to give Eddie Bauer "notice of the particular misconduct" so that Eddie Bauer can defend against the charge. Her factual allegations are also amply supported by her pre-suit investigation and easily raise a reasonable expectation that discovery will reveal evidence to support her claims.

### 1. Ms. Clark Pleaded the "Who, What, When, Where, and How" of Eddie Bauer's Misconduct.

Two recent Ninth Circuit decisions have articulated all that is required to satisfy Rule 9(b)'s "who, what, when, where, and how" pleading requirements in a false price advertisement case. *See Nunez v. Saks Inc.*, 771 F. App'x 401, 403 (9th Cir. 2019); *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 567 (9th Cir. 2017).

In *Nunez*, Rule 9(b) was satisfied by the following allegations:

> Nunez alleges he purchased a pair of Saks Fifth Avenue branded shoes at an Off Fifth store in San Diego, California (the Where) on July 15, 2015 (the When). He further alleges that Saks (the Who) used a uniform pricing scheme for its price tags for Saks Fifth Avenue branded clothing (the What) sold exclusively at Off Fifth stores. These price tags include a fictious "Market Price" alongside a "You Pay" price at which the product is sold, but the products are never in fact offered for sale or sold at the "Market Price" (the How). Nunez also alleges that the "Market Price" is likely to mislead a reasonable consumer into believing he is purchasing a discounted product.

*Nunez*, 771 F. App'x 401, 403 (9th Cir. 2019); *see also Rubenstein*, 687 F. App'x at 567 (detailing the plaintiff's "who, what, when, where, and how" of the alleged misconduct).

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS - 14
20-CV-1106-JCC

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

Ms. Clark has pleaded "the who, what, when, where, and how" that Rule 9(b) requires. In her complaint, Ms. Clark alleges that on two separate occasions—March 22, 2017, and April 5, 2018 (the When)—she made purchases at one of Eddie Bauer's outlet stores—the first purchase at the outlet store located at 450 NW 257th Avenue, Suite 200, Troutdale, Oregon 97060, and the second purchase at the outlet store located at 1001 North Arney Road, Suite 600, Woodburn, Oregon 97071 (the Where). Compl., ¶¶ 46, 54–55, 58–66. Ms. Clark further alleges that Eddie Bauer (the Who) engages in a uniform false discount pricing scheme, whereby it advertises perpetual sales events and/or product discounts for nearly all of its exclusive Eddie Bauer-branded products at a fixed percentage off from an advertised list price (the What). Compl., ¶¶ 20–22. The list price is presented by Eddie Bauer as its regular and normal price for the products; however, because Eddie Bauer's discounts are perpetual, the products are rarely, if ever, actually offered for sale or sold at their respective list prices (the How). Compl., ¶¶ 23, 34–39. Eddie Bauer invents inflated and fictitious list prices so that it can advertise perpetual store-wide "sale" events and product discounts to induce customers to purchase its products. Compl., ¶ 34. Ms. Clark also alleges that the fictitious list prices are material representations and are likely to mislead a reasonable consumer into believing she is purchasing a discounted product, and that the product has an actual value equal to the list price (i.e., to the purported regular price). Compl., ¶¶ 66–69.

The above allegations clearly identify "the circumstances constituting fraud" so that Eddie Bauer "can prepare an adequate answer from the allegations." As the Ninth Circuit and this district have held, Rule 9(b) requires nothing more. *See Nemykina v. Old Navy, LLC*, 2020 WL 2512884, at *3–*4 (W.D. Wash. May 15, 2020) (holding that similar factual allegations satisfied Rule 9(b) because they were sufficiently particular "to enable Defendants to investigate her allegations and, to the extent appropriate, deny them."); *see also Stathakos v. Columbia Sportswear Co.*, 2016 WL 1730001, at *3 (N.D. Cal. May 2, 2016); *Safransky v. Fossil Grp., Inc.*, 2018 WL 1726620, at *10 (S.D. Cal. Apr. 9, 2018).

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS - 15
20-CV-1106-JCC

HATTIS & LUKACS
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

**2. Ms. Clark's Pre-Suit Investigation Far Surpasses What Rule 9(b) Requires.**

Rule 9(b) is relaxed in a false price advertising case because a plaintiff "cannot reasonably be expected to have detailed personal knowledge of [the defendant's] internal pricing policies or procedures for its [stores]." *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 567–68 (9th Cir. 2017). (holding that the plaintiff's "allegations regarding the fictitious nature of the Compared To prices may properly be based on personal information and belief at this stage of the litigation"). A number of district courts have even held that "plaintiffs are not required to plead that they had conducted a pre-suit investigation—or include the results of such investigations—in every case, particularly where the information is not within the personal knowledge of the pleader." *Stathakos*, 2016 WL 1730001, at *4; *see also Safransky*, 2018 WL 1726620, at *12. In fact, the Ninth Circuit in both *Nunez* and *Rubenstein* found that Rule 9(b) had been met without requiring a pre-suit investigation by the plaintiff. *See Nunez*, 771 F. App'x 401; *Rubenstein*, 687 F. App'x 564. Given what little is required by a plaintiff to satisfy Rule 9(b) in a false advertising case, Ms. Clark's pre-suit investigation amply supports her factual allegations.

Ms. Clark bases her factual allegations on her counsel's extensive investigation into every one of Eddie Bauer's sales channels. *See* Compl., ¶¶ 24, 37–39. This investigation included: (1) repeated visits and surveys of several Eddie Bauer Outlet stores by her counsel; (2) monitoring Eddie Bauer's website on a daily basis for over four years, assembling a database of daily prices and screenshots of approximately 2.3 million daily product offerings for approximately 9,572 products; and (3) repeated visits to several Eddie Bauer retail stores by her counsel. *See* Compl., ¶¶ 24, 37–39, 121.

This comprehensive investigation demonstrated that Eddie Bauer advertises year-round continual and overlapping sale events of at least 30% off all of its products in its retail stores and on its website. Compl., ¶ 38. In other words, Ms. Clark's investigation conclusively demonstrates that Eddie Bauer's advertised list prices for its products sold in its retail stores and on its website are falsely inflated and do not represent the product's actual regular selling

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

price. *See* Compl., ¶ 121.[2]

The investigation also revealed that Eddie Bauer's outlet store pricing practices appear to be the exact same as its retail and website practices (if not more egregious). On every single outlet store visit, Ms. Clark's counsel witnessed a store-wide sale of between 40% to 70% off everything in the store. Compl., ¶ 24. Taken together, Eddie Bauer's constant store-wide sales in its outlet stores, coupled with Ms. Clark's well-documented evidence of Eddie Bauer's penchant for advertising false list prices on its website and in its retail stores, is more than sufficient to raise a "reasonable expectation that discovery will reveal evidence" to support Ms. Clark's UTPA claim. *See Rubenstein* 687 F. App'x at 566; *see also Fisher v. Eddie Bauer LLC*, 2020 WL 4218228, at *4 (S.D. Cal. Feb. 3, 2020) (holding that similar claims regarding Eddie Bauer's outlet store pricing practices satisfied Rule 9(b) where the plaintiff's factual allegations were far less detailed).[3]

Eddie Bauer nevertheless complains that Ms. Clark's pre-suit investigation is deficient to support her factual allegations because she "does not claim to have investigated the pricing of the items she purchased." Motion at 16. Eddie Bauer also complains that it is impermissible for Ms. Clark to support her allegations using evidence regarding Eddie Bauer's online and retail store pricing practices because her claims only concern products purchased at Eddie Bauer's outlet stores. *See* Motion at 3. Both complaints are meritless.

Although not required,[4] Ms. Clark did, in fact, provide detailed allegations regarding the price history of one product she purchased—the StormDown Jacket that she purchased on April 5, 2018. *See* Compl., ¶¶ 59–66. The StormDown Jacket was sold in Eddie Bauer's retail stores

---

[2] In a footnote, Eddie Bauer misleadingly attempts to cast doubt on the merits of Ms. Clark's claims by stating that "Plaintiff's counsel has unsuccessfully sued Eddie Bauer, twice—based on the same claims." *See* Motion at 3, n.1. In reality, both cases were compelled to arbitration, allowing Eddie Bauer to escape any court rulings on the merits.

[3] Notably, after the court denied Eddie Bauer's motion to dismiss in *Fisher*, the parties privately settled, and Eddie Bauer changed most of its Outlet price tags to read "Comparable Value."

[4] This district court has already held that a plaintiff does not need to investigate the exact items she purchased—general allegations that the defendant's store-wide pricing practices are "pervasive (if not ubiquitous) <u>easily raises the inference that the practices also relate to her specific purchase</u>." *Nemykina*, 2020 WL 2512884, at *3 (emphasis added).

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

and was still being sold on Eddie Bauer's website the day Ms. Clark bought it at Eddie Bauer's outlet store. Because the jacket was being sold on Eddie Bauer's website, Ms. Clark's attorneys had the jacket's entire price history from the first day Eddie Bauer ever offered it for sale. Thus, Ms. Clark was able to specifically allege that the StormDown Jacket had never been offered at its list of $229.00 in <u>any of Eddie Bauer's sales channels (website, retail store, or outlet store) in the immediately preceding 600 days</u>. Compl., ¶ 66.

Eddie Bauer fails to explain why Ms. Clark cannot use her evidence regarding Eddie Bauer's online and retail store pricing practices when such evidence is directly relevant to one of her purchases. And, besides being directly relevant, this evidence may also be used for her general factual allegations regarding Eddie Bauer's Outlet Store pricing practices. In two of Eddie Bauer's three sales channels, Ms. Clark has definitive proof that Eddie Bauer falsely inflates the list prices of its products. And, every time her counsel visited one of Eddie Bauer's Outlet Stores, there was a store-wide sale off everything. Taken together, it is reasonable to infer that Eddie Bauer's Outlet Store pricing practices are the same or similar to its online and retail store pricing practices. This is more than sufficient to survive a motion to dismiss and to allow Ms. Clark to conduct discovery to confirm that Eddie Bauer's Outlet Store pricing practices are just as egregious as its mainline retail store and online pricing practices.

Finally, it is worth noting that the UTPA requires Eddie Bauer to provide factual evidence demonstrating that its price comparison representations are in compliance with both the UTPA and the rules promulgated by the Attorney General. ORS § 646.883(2). In other words, because Ms. Clark has plausibly alleged a UTPA claim, the burden of proof is now on Eddie Bauer to demonstrate the legitimacy of its pricing practices.

**B.** **Ms. Clark Has Alleged An Ascertainable Loss.**

Eddie Bauer argues that Ms. Clark has not alleged an ascertainable loss under the UTPA. *See* Motion at 17. Eddie Bauer is incorrect. Ms. Clark has alleged two forms of ascertainable loss that Oregon courts recognize: (1) the monetary loss of purchasing a product that Ms. Clark would not have otherwise purchased but for Eddie Bauer's false price representations; and (2) the loss of the value of the advantageous bargain that was represented,

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

i.e., a 50% discount from each product's regular selling price.

### 1. Ms. Clark has Established Ascertainable Loss in the Purchase Price of the Products.

"Whenever a consumer has received something other than what he bargained for, he has suffered a loss of money or property." *Weigel v. Ron Tonkin Chevrolet Co.*, 298 Or. 127, 136 (1984). Accordingly, to establish an ascertainable loss, a plaintiff must only plead that "he would not have purchased the product but for the alleged misrepresentation." *Walters v. Vitamin Shoppe Indus., Inc.*, 701 F. App'x 667, 670 (9th Cir. 2017). The ascertainable loss is "the monetary value of a product that [the plaintiff] would not otherwise have bought." *Id.* (citing *Pearson v. Philip Morris, Inc.*, 358 Or. 88, 125, 361 P.3d 3, 27 (2015)); *see also Silva v. Unique Beverage Co., LLC*, 2017 WL 4896097, at *11 (D. Or. Oct. 30, 2017) (holding that the plaintiff's purchase constituted an ascertainable loss because the plaintiff stated that he "would not have purchased the product absent the allegedly false representation").

Ms. Clark alleges that she relied on Eddie Bauer's price misrepresentations when purchasing her products and she "would not have purchased the products at the prices she paid" but for Eddie Bauer's price misrepresentations. Compl., ¶¶ 70–71. Ms. Clark has therefore demonstrated ascertainable loss in the form of the monetary value of the products that she would not otherwise have bought. *See Walters*, 701 F. App'x at 670.

### 2. Ms. Clark has Established an Ascertainable Loss in the "Loss of the Value of the Advantageous Bargain Promised."

A plaintiff may also establish an ascertainable loss in the "loss of the value of the advantageous bargain that was represented." *Simonsen v. Sandy River Auto, LLC*, 290 Or. App. 80, 81 (2018). In *Simonsen*, the representation of "a really good deal" was an "advantageous bargain in which the buyer [was] getting a car at a *better* value than its actual price." *Id.* at 91 (emphasis in original). Thus, even though the plaintiff got exactly what he paid for "in terms of *market value*," the court held that the plaintiff suffered an ascertainable loss in the <u>difference between the market price of the car and the advantageous bargain promised—"something better than the market price.</u>" *Id.* at 92. "The precise measure of that better value did need not to be

HATTIS & LUKACS
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

proven." *Id.* at 91.

Here, Ms. Clark purchased several products from Eddie Bauer that were advertised with a list price and a "50% off" sale sign. *See* Compl., ¶¶ 48, 49, 60. The advantageous bargain promised to Ms. Clark was that she was getting Eddie Bauer's products at 50% off their regular selling prices. However, as detailed in her Complaint, Eddie Bauer's list prices are falsely inflated and do not represent the product's regular selling price because Eddie Bauer perpetually discounts all of its products 40% to 70% off. *See* Compl., ¶¶ 4–5, 22, 33–36, 56, 66. Because every product is perpetually discounted, <u>the actual "regular" price of each product is something less than its list price</u>. Therefore, Ms. Clark necessarily received something less than the advantageous bargain promised of 50% off each product's regular price. That "something less" is the ascertainable loss—the precise amount does not need to be proven.

### 3. Eddie Bauer's Ascertainable Loss Arguments are Meritless.

Eddie Bauer makes two main arguments for why Ms. Clark has not alleged an ascertainable loss: (1) Ms. Clark could obtain a full refund at any time under Eddie Bauer's return policy; and (2) Ms. Clark "got what she paid for." *See* Motion at 17–23. Both arguments are meritless.

### a. Eddie Bauer's refund policy is irrelevant.

The running theme in Eddie Bauer's motion is that its return policy is some ironclad liability shield that defeats standing, moots Ms. Clark's claims, and eliminates her injuries. Now, Eddie Bauer argues that its refund policy also eliminates Ms. Clark's ascertainable loss because she had to mitigate her losses by returning her purchases for a refund. *See* Motion at 17–18. However, as explained repeatedly above, Eddie Bauer's return policy does none of this and has no effect on Ms. Clark's injuries or her ascertainable loss.

First, Ms. Clark cannot obtain a full refund under Eddie Bauer's current stated and published return policy, negating Eddie Bauer's entire argument. Second, even if a refund were available, it has no impact on Ms. Clark's injury/ascertainable loss. Ms. Clark continues to suffer an injury until she "*actually receives* all of the relief to which she is entitled on the

claim." *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1145 (9th Cir. 2016) (emphasis in original). Because injury and ascertainable loss are one-in-the-same here, Ms. Clark continues to suffer an ascertainable loss as well. *See Pearson*, 358 Or. at 127 (explaining that a plaintiff's injury and ascertainable loss are the same for a UTPA claim).

The only semi-relevant case Eddie Bauer cites for its argument is *Hamilton*. *See* Motion at 18.[5] *Hamilton* held that the plaintiff's injury/ascertainable loss was mooted by the defendant's refund program even though the plaintiff refused to accept the refund. *See* 2016 WL 4060310, at *5. However, as described above, *Hamilton* is both factually distinguishable and was wrongly decided in light of controlling Ninth Circuit and Supreme Court precedent. As *Chen* and *Campbell-Ewald* make clear, a person can refuse to accept a full refund from the defendant and that does not eliminate their injury. *See Campbell-Ewald*, 136 S. Ct. at 672; *Chen*, 819 F.3d at 1145. Because a person's injury *is* the ascertainable loss, a rejected offer similarly does not eliminate a person's ascertainable loss.

**b.    Eddie Bauer's "got what you paid for" argument fails.**

Eddie Bauer argues that there is no ascertainable loss because Ms. Clark "got merchandise she wanted at prices she agreed to pay." *See* Motion at 17. *Simonsen* demonstrates that this argument is meritless. The plaintiff in *Simonsen* "got the car he wanted at the price he agreed to pay," and, in fact, that price was even the exact market value of the car. *See* 290 Or. App. at 91–92. Regardless, the plaintiff still suffered an ascertainable loss in not receiving the advantageous bargain promised—"something better than the market price." *Id.* at 92. Thus, it is irrelevant that Ms. Clark "got merchandise she wanted at prices she agreed to pay." She was promised the advantageous bargain of 50% off the product's regular selling price. Because she received "something less than" 50% off the product's regular selling price, she suffered an ascertainable loss. Moreover, for ascertainable loss, it is enough that Ms. Clark would not have

---

[5] The only other case Eddie Bauer cites, *Paul v. Providence*, 237 Or. App. 584, 602 (2010), is inapposite. *Paul* only stands for the proposition that an ascertainable loss cannot be money a person "spent to forestall threatened losses." *Id.* Ms. Clark's ascertainable loss is not based on money she spent to prevent future losses.

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

purchased the products absent the price misrepresentations. *See Walters*, 701 F. App'x at 670.

Eddie Bauer also makes various nonsensical arguments about how a product's list price is completely detached from the product's actual value. For example, Eddie Bauer argues that its list prices neither "impacts the item's inherent value" or "reflects the item's current value." Motion at 21. This is absurd. First, Eddie Bauer's list prices must represent the product's "<u>normal or regular</u>" price under the UTPA. *See Denson v. Ron Tonkin Gran Turismo, Inc.*, 279 Or. 85, 92 (1977) ("The evil proscribed by [ORS 646.608(1)(j)] is the misrepresentation of facts concerning the normal or regular price of goods"). And, the Ninth Circuit has explained that a <u>product's regular price represents the product's value</u>. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1105–06 (9th Cir. 2013). The UTPA even specifically defines a product's "regular price" as the price that the seller offered or sold that particular product for <u>within the preceding 30 days</u>. OAR 137-020-0010(6)(a). Therefore, contrary to Eddie Bauer's assertions, its list prices do, in fact, represent the "inherent value" or "current value" of the product.

Eddie Bauer also incorrectly argues that ascertainable loss must take the form of some "character or quality" that Ms. Clark expected to receive. Motion at 23. *Simonsen* clearly demonstrates that ascertainable loss may take other forms than just physical qualities, such as the loss of the "advantageous bargain that was represented." *See Simonsen*, Or. App. at 81; *see also Feitler v. Animation Celection, Inc.*, 170 Or. App. 702, 713 (2000) (holding that the loss of "exclusivity" in owning a complete art collection constituted ascertainable loss even though the plaintiff got the exact market value of the products he paid for). The advantageous bargain here was 50% off the product's regular selling price. Because Ms. Clark received "something less than" 50% off the product's regular selling price, she suffered an ascertainable loss.

Finally, Eddie Bauer's efforts to cite out-of-state, irrelevant caselaw defining ascertainable loss under the statutes of states other than Oregon are unpersuasive. *See* Motion at 22–23. The Oregon Supreme Court has already addressed the various "divergent views of the requirement of ascertainable loss" taken by courts in other states. *See Weigel v. Ron Tonkin Chevrolet Co.*, 298 Or. 127, 136 (1984). While other states define "ascertainable loss" more stringently, all Oregon requires is that "a consumer has received something other than what he

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

bargained for." *Id.* The amount of that "something" does not need to be known and it could be "so small that the common law likely would reject it as grounds for relief." *Id.*

**C. Ms. Clark's UTPA Claim Is Within The Statute Of Limitations.**

Eddie Bauer argues that Ms. Clark's UTPA claim is time-barred because she "has not alleged any facts establishing that she was unaware of Eddie Bauer's pricing practices within a year of her purchases." *See* Motion at 12–13. Eddie Bauer is incorrect.

Actions brought under the UTPA "must be commenced within one year after the discovery of the unlawful method, act or practice." ORS § 646.638(6). Accordingly, "the period of limitations for fraud begins to run when the plaintiff <u>knows or should have known of the alleged fraud</u>." *Mathies v. Hoeck*, 284 Or. 539, 543, 588 P.2d 1, 2 (1978) (emphasis added). Whether the plaintiff should have known of the alleged fraud depends on a two-step analysis. "First, it must appear that plaintiff had sufficient knowledge to 'excite attention and put a party upon his guard or call for an inquiry.'" *Id.* If the plaintiff had such knowledge, "it must also appear that 'a reasonably diligent inquiry would disclose' the fraud." *Id.* This is a question for the jury "except where only one conclusion can reasonably be drawn from the evidence." *Id.*

Ms. Clark first became aware of Eddie Bauer's false advertising scheme on March 13, 2020. Compl., ¶¶ 73, 118. She learned of the scheme through her counsel, who have been investigating Eddie Bauer's unlawful pricing practices for several years. Ms. Clark also explained that she—as well as the members of the putative class—could not have reasonably discovered Eddie Bauer's deceptive pricing practices because they are hidden by design. Compl., ¶ 120.

In response, Eddie Bauer argues that its pricing practices are "publicly available to any customer who enters an outlet or mainline store." *See* Motion at 13–14. This is completely disingenuous. Nothing in Eddie Bauer's Outlet Stores (or at any of its retail stores or on its website) indicates that Eddie Bauer's discounts are fake or are based on invented list prices that its products have never been offered at. When a customer walks into one of Eddie Bauer's stores, they are only presented with the list price and sale price and advertised "xx% off" discount of each product for that day. The customer does not have the benefit of historical

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

pricing data on each item to realize that the products have actually never been offered for sale at their list price. Because Ms. Clark, like any other reasonable consumer, is entitled to presume that retailers are not engaging in unlawful pricing practices, she would have no reason to doubt the veracity of Eddie Bauer's price advertisements the two times she visited Eddie Bauer's Outlet Stores. In fact, Eddie Bauer is counting on it. Thus, Ms. Clark never had sufficient knowledge of Eddie Bauer's deceptive pricing practices to "excite attention" and put her on "guard or call for an inquiry" to disclose the fraud.

Ms. Clark's allegations that Eddie Bauer's deceptive pricing practices were concealed and not reasonably discoverable are sufficient to demonstrate that the discovery rule applies for the purposes of a motion to dismiss. *See Mendoza v. Lithia Motors, Inc.*, 2017 WL 125018, at *2–3 (D. Or. Jan. 11, 2017) (holding that the discovery rule applied where the plaintiffs alleged that defendants concealed information regarding the true nature of defendants' financial arrangements preventing plaintiffs from discovering the details of those arrangements). Any further contention that Ms. Clark should have reasonably known about Eddie Bauer's deceptive pricing practices at the time she made her purchase is a question for the jury. *See Bodin v. B. & L. Furniture Co.*, 42 Or. App. 731, 735 (1979) (overturning trial court's ruling that discovery rule did not apply as a matter of law and holding that the question must be decided by a jury); *Vinci v. Hyundai Motor Am.*, 2018 WL 6136828, at *11 (C.D. Cal. Apr. 10, 2018) (holding that it was for a jury to decide whether the plaintiffs should have known about the defendant's unlawful conduct at the time of their respective power-steering issues).

Because Ms. Clark first had actual knowledge of Eddie Bauer's deceptive pricing practices on March 13, 2020, that is the day the statute of limitations began to run—absent a jury finding otherwise. Therefore, the filing of her Complaint on July 16, 2020, was well within the one-year limitations period.

## VI. CONCLUSION

For the reasons stated above, the Court should deny Eddie Bauer's motion to dismiss.

DATED this 29th day of September, 2020.

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

HATTIS & LUKACS

By: /s/ Daniel Hattis
Daniel M. Hattis, WSBA No. 50428
dan@hattislaw.com
Paul Karl Lukacs, WSBA No. 56093
pkl@hattislaw.com
Che Corrington, WSBA No. 54241
che@hattislaw.com
HATTIS & LUKACS
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
Phone 425.233.8628
Fax 425.412.7171

Attorneys for Plaintiff Susan Clark
and the Proposed Class

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

## CERTIFICATE OF SERVICE

The undersigned certifies under penalty of perjury under the laws of the State of Washington and the United States of America that on the 29th day of September, 2020, the document attached hereto was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in the matter.

DATED this 29th day of September, 2020.

/s/ Daniel M. Hattis
Daniel M. Hattis, WSBA No. 50428