UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SUSAN CLARK,<br>for Herself and/or On Behalf Of All<br>Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EDDIE BAUER LLC; and<br>SPARC GROUP LLC,<br><br>Defendants. | No. 2:20-cv-01106-RAJ<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR STATUTORY DAMAGES AND INJUNCTIVE RELIEF UNDER THE OREGON UNLAWFUL TRADE PRACTICES ACT, ORS 646.605** *et seq.*<br><br>**JURY TRIAL DEMANDED** |

FIRST AMENDED CLASS ACTION COMPLAINT
FOR DAMAGES AND INJUNCTIVE RELIEF- 1
CASE NO. 2:20-CV-01106-RAJ

**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Plaintiff Susan Clark, demanding trial by jury as to all issues so triable, alleges as follows, on personal knowledge and upon the investigation of her counsel and upon information and belief where stated to be upon information and belief, against Defendants Eddie Bauer LLC and SPARC Group LLC (collectively, "Eddie Bauer" or "Defendants"):

## INTRODUCTION

1. This is a class action brought under Oregon law on behalf of all consumers who, within the applicable limitations period (the duration of which was enlarged by the delayed discovery rule), purchased one or more products at any of Eddie Bauer's brick-and-mortar retail outlet stores (hereinafter "Outlet Stores" or "Outlet") located in Oregon.

2. Eddie Bauer is a popular retailer which claims to offer "premium-quality clothing, accessories, and gear for men and women that complement today's modern outdoor lifestyle."

3. Nearly all of the products offered at the Outlet Stores are branded as Eddie Bauer products. Almost all of the products (more than 90%) offered at the Outlet Stores are manufactured exclusively for the Outlet Stores and have never been offered at the non-outlet mainline Eddie Bauer retail stores, on the mainline Eddie Bauer website (www.eddiebauer.com), or by any other retailer.

4. For decades, Eddie Bauer has engaged in a massive false discount advertising scheme at its Outlet Stores. Eddie Bauer advertises perpetual discounts (typically a purported savings of 40% to 70% off) from Eddie Bauer's self-created ticketed prices printed on its product tags. Eddie Bauer represents these ticketed prices to be the regular and normal prices of the products, and the ticketed prices function as "reference prices" from which the advertised discounts and percentage-off sales are calculated.

5. Eddie Bauer's discounts and reference prices at its Outlet Stores are false because Eddie Bauer rarely, if ever, offered the products at the advertised ticketed price. For the greater-than-90% of products that are manufactured exclusively for the Outlet Stores, Eddie Bauer *never* offered the products at the ticketed price. For the less-than-10% of products (which are displayed on the "Clearance" racks) that may have been previously offered in Eddie

**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Bauer's mainline (non-outlet) retail stores and on its website www.eddiebauer.com, Eddie Bauer rarely, if ever, offered the products at the ticketed price—and never in good faith.

6.     Eddie Bauer perpetrates this illegal scheme to create the illusion of savings and to induce customers to purchase its products. Eddie Bauer's marketing plan is to trick its customers into believing that its products are worth, and have a value equal to, the inflated ticketed price, and that the lower advertised sale price represents a special bargain. In fact, not only are the advertising savings always false; in many cases the "sale" price is actually <u>higher</u> than Eddie Bauer's true regular selling price for the product.

7.     In January 2020, <u>after</u> Plaintiff Clark made her purchases, and after Eddie Bauer had been separately sued for false discount advertising at its non-outlet retail stores and website, Eddie Bauer began adding the phrase "Comparable Value" next to the ticketed prices printed on its product tags in all of its Outlet Stores. However, for all of its products, the ticketed prices printed on its product tags remained exactly the same; Eddie Bauer simply now instructed its ticketing vendor, who provided Eddie Bauer with its product price tags, to add the words "Comparable Value" next to the identical and unchanged ticketed prices. Eddie Bauer also continued to advertise the same purported dollar and percentage-off discounts on store signage as it always had. Through the present day, the ticketed prices Eddie Bauer prints on its price tags in its Outlet Stores and lists on its Outlet website www.eddiebaueroutlet.com (which was launched around November 2020) continue to be inflated, and the advertised discounts continue to be false.

8.     Eddie Bauer's ongoing fraudulent advertising scheme at its Outlet Stores harms consumers like Plaintiff Susan Clark by causing them to pay more than they otherwise would have paid and to buy products that they otherwise would not have bought. Customers do not enjoy the actual discounts Eddie Bauer promises them, and the items are not in fact worth the amount that Eddie Bauer represents to them.

9.     Plaintiff Susan Clark brings this action individually and also as a representative plaintiff on behalf of a class of consumers who purchased one or more products advertised with a discount at an Eddie Bauer Outlet Store located in Oregon. Plaintiff seeks, among other

FIRST AMENDED CLASS ACTION COMPLAINT
FOR DAMAGES AND INJUNCTIVE RELIEF- 3
CASE NO. 2:20-CV-01106-RAJ

**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA  98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

things, statutory damages under the Oregon Unlawful Trade Practices Act of $200 per class member or actual damages, whichever is greater. Plaintiff also seeks an order for public injunctive relief, enjoining Eddie Bauer from engaging in the unlawful conduct alleged herein, both in its Oregon Outlet Stores and on its Outlet website www.eddiebaueroutlet.com which is viewed by Oregon consumers.

## **PARTIES**

10.    Plaintiff Susan Clark is a citizen of the United States of America and a citizen of the State of Oregon. She is an adult who resides in the city of Keizer, Marion County, Oregon.

11.    Defendant Eddie Bauer LLC is a limited liability company chartered under the laws of the State of Delaware and which currently has and at all relevant times in the past has had its headquarters, executive office, principal place of business or nerve center within the Western District of Washington. Prior to 2022, Eddie Bauer LLC's headquarters were in Bellevue, Washington. In 2022, Eddie Bauer LLC moved its headquarters to Seattle, Washington. Eddie Bauer LLC operates the Eddie Bauer Outlet Stores and the Eddie Bauer mainline (non-outlet) stores throughout the United States, and operates the Eddie Bauer retail websites at www.eddiebauer.com and www.eddiebaueroutlet.com. Eddie Bauer LLC operates at least five Outlet Stores in Oregon. The www.eddiebaueroutlet.com website is viewed and patronized by residents of Oregon.

12.    Defendant SPARC Group LLC ("SPARC") is a limited liability company chartered under the laws of the State of Delaware. SPARC has headquarters in Lyndhurst, New Jersey and New York, New York. SPARC is a joint venture between Simon Property Group, L.P. and Authentic Brands Group LLC.

13.    On or around May 2021, SPARC, together with Authentic Brands Group LLC, acquired the Eddie Bauer brand and assets, including Eddie Bauer LLC.[1] Since that time, SPARC has operated with its Eddie Bauer LLC unit managing the retail and website operations of the Eddie Bauer brand, including the Outlet Stores and the Outlet website. The Eddie Bauer

---

[1] See https://sgbonline.com/eddie-bauer-to-be-sold-to-authentic-brands-and-simon/, last accessed on April 5, 2024.

FIRST AMENDED CLASS ACTION COMPLAINT
FOR DAMAGES AND INJUNCTIVE RELIEF- 4
CASE NO. 2:20-CV-01106-RAJ

brand operations have remained headquartered in Seattle, Washington. Based on information and belief, marketing decisions and implementation of advertising practices relevant to this lawsuit continue to occur in Seattle, Washington. According to MyTotalRetail.com, "Following the close of the transaction, Sparc's operating platform will include Eddie Bauer, Brooks Brothers, Lucky Brand, Nautica, Aéropostale, and Forever 21, which collectively generate nearly $8.6 billion in systemwide retail sales annually. Eddie Bauer will remain headquartered in the Seattle area . . . . The Eddie Bauer team, in partnership with Sparc, will manage the brand's sourcing, product design and development, wholesale, planning and allocation, and e-commerce as well as its 300 stores, which are principally located in the U.S. and Canada."[2] As of April 5, 2024, the CEO of the Eddie Bauer brand is Tim Bantle, who, according to his LinkedIn profile[3] and news accounts[4], works out of Eddie Bauer's headquarters in Seattle, Washington, and reports to Marc Miller, CEO of SPARC Group LLC.

14. Defendants Eddie Bauer LLC and SPARC Group LLC are collectively referred to herein as "Eddie Bauer" or "Defendants."

## JURISDICTION AND VENUE

15. **Subject Matter Jurisdiction.** The Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a)(1)—i.e., traditional diversity jurisdiction—because the amount in controversy exceeds the sum or value of $75,000 (exclusive of interest and costs) and the matter is between citizens of different state.

16. The Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d)(2)— i.e., Class Action Fairness Act jurisdiction—because the amount in controversy exceeds the sum or value of $5 million (exclusive of interest and costs) and is a

---

[2] *See* Campanelli, Melissa, "Sparc Group Adds to Brand Portfolio With Eddie Bauer Acquisition," May 10, 2021, available at https://www.mytotalretail.com/article/sparc-group-adds-to-brand-portfolio-with-eddie-bauer-acquisition/, last accessed on April 5, 2024.

[3] *See* LinkedIn at https://www.linkedin.com/in/tim-bantle-aa41b013/, last accessed on April 5, 2024.

[4] *See* Unglesbee, Ben, "Eddie Bauer taps VF Corp exec as new CEO," September 27, 2022, available at https://www.retaildive.com/news/eddie-bauer-names-tim-bantle-ceo/632722/, last accessed on April 5, 2024.

FIRST AMENDED CLASS ACTION COMPLAINT
FOR DAMAGES AND INJUNCTIVE RELIEF- 5
CASE NO. 2:20-CV-01106-RAJ

**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

class action in which any member of a class of plaintiffs is a citizen of a state different from any defendant.

17.     **Personal Jurisdiction**. This Court has personal jurisdiction over Defendant Eddie Bauer LLC because Eddie Bauer LLC is headquartered in Washington State and in the Western District of Washington at 2200 1st Avenue South, Seattle, Washington 98134-1452. Eddie Bauer LLC is authorized to do business and regularly conducts business in the State of Washington such that the maintenance of this lawsuit does not offend traditional notions of fair play and substantial justice.

18.     This Court can exercise personal jurisdiction over SPARC pursuant to Washington State's long-arm statute, RCW 4.28.185, which allows this Court to exercise personal jurisdiction over SPARC to the fullest extent allowed under the federal due process clause. SPARC has certain minimum contacts with the State of Washington and/or with the Western District of Washington such that the maintenance of this lawsuit does not offend traditional notions of fair play and substantial justice.

19.     SPARC is the successor to Eddie Bauer Parent LLC, which was a defendant named in the original Complaint filed in this action.

20.     In the event that a defendant challenges this Court's exercise of personal jurisdiction, jurisdictional discovery will be conducted to reveal the precise degree to which Eddie Bauer LLC and SPARC share or divide conduct and decision-making with regard to the false advertising scheme alleged in this First Amended Complaint.

21.     For present purposes and in the first instance, Plaintiff Clark pleads that SPARC is subject to the Court's personal jurisdiction by, through and due to the unlawful acts and omissions of its subsidiary Eddie Bauer LLC. Upon information and belief: SPARC so dominates Eddie Bauer LLC that Eddie Bauer LLC primarily transacts SPARC's business rather than its own, particularly with regard to the false advertising scheme alleged herein. The officers and employees of SPARC exercise control over the daily operations of Eddie Bauer LLC and act as the true prime movers behind the subsidiary's actions, particularly with regard to the ongoing false advertising alleged herein. Eddie Bauer LLC exists solely to serve its

FIRST AMENDED CLASS ACTION COMPLAINT
FOR DAMAGES AND INJUNCTIVE RELIEF- 6
CASE NO. 2:20-CV-01106-RAJ

**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA  98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

parent SPARC. Eddie Bauer LLC is an agent of SPARC. To the extent that Eddie Bauer LLC independently engages in tortious conduct (such as the false advertising scheme alleged herein), SPARC ratified and continues to ratify that conduct and received and continues to receive benefits from that that unlawful conduct.

22.     In the alternative, this Court can exercise personal jurisdiction over SPARC because SPARC personally engaged and personally continues to engage in some or all of the unlawful acts and omissions alleged in this First Amended Complaint. For example and upon information and belief, SPARC decided when and how Eddie Bauer LLC would continue to engage in the false advertising scheme alleged in this First Amended Complaint, or SPARC allowed Eddie Bauer LLC to do so. For example and upon information and belief, SPARC Group LLC decided that Eddie Bauer LLC would switch to displaying the phrase "Comparable Value" next to an item's ticketed price, or SPARC allowed Eddie Bauer to do so.

23.     **Venue**. Venue is proper in the Western District of Washington because, pursuant to 28 U.S.C. § 1391(b)(1), this judicial district is a judicial district in which Defendant Eddie Bauer LLC resides, and pursuant to 28 U.S.C. § 1391(c)(2), for venue purposes Defendants shall be deemed to reside in this judicial district because Defendants are subject to the court's personal jurisdiction with respect to this civil action.

## FACTUAL ALLEGATIONS OF EDDIE BAUER'S UNLAWFUL PRACTICES

24.     Eddie Bauer is a popular retailer which claims to offer "premium-quality clothing, accessories, and gear for men and women that complement today's modern outdoor lifestyle." Eddie Bauer currently operates hundreds of Outlet Stores in the United States, including at least five Outlet Store locations in Oregon. Eddie Bauer also currently operates the Outlet website at www.eddiebaueroutlet.com, which is viewed and patronized by residents of Oregon.

25.     Nearly all of the products sold at Eddie Bauer's Outlet Stores, mainline (non-outlet) retail stores, and on its websites are branded as "Eddie Bauer" products and are exclusively offered by Eddie Bauer and are not offered by any other retailer.

**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA  98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

26.     For decades, Eddie Bauer has engaged in a massive false discount advertising scheme across virtually all of its Eddie Bauer-branded products across all of its sales channels including in its Outlet Stores, in its mainline Eddie Bauer retail stores, and on its websites. (However, this lawsuit is limited to a class of consumers who purchased products at the brick-and-mortar retail Outlet Stores in Oregon.)

27.     At its Outlet Stores nationwide, Eddie Bauer advertises perpetual store-wide sales (typically ranging from 40% to 70% off) on all of its products. The purported discounts are calculated from Eddie Bauer's self-created ticketed prices printed on its product tags.

28.     The ticketed price on its product tags (i.e., reference price) is presented by Eddie Bauer as its own regular and normal price for the products from which the discounts are taken. The ticketed price is printed and advertised on each product's price tag. Eddie Bauer advertises percentage-off and dollars-off discounts next to each of the products and throughout the entire store (e.g., at the store's entrance, on the store windows, on the clothing racks and shelves inside the store, and/or on discount stickers on product price tags).

29.     As part of Plaintiff's investigation, Plaintiff's counsel visited several of Eddie Bauer's Outlet Stores in Washington State since March 2016. On every single visit, Plaintiff's counsel witnessed an advertised store-wide sale of between 40% to 70% off everything in the Outlet Store. Based on the investigation of Plaintiff's counsel, Eddie Bauer advertises the same or substantially the same perpetual store-wide sales at all of its Outlet Store locations, including at its Outlet Stores in Oregon. Below are photos taken by Plaintiff's counsel at various Eddie Bauer Outlet Stores in Washington State between March 2016 and April 2019:

FIRST AMENDED CLASS ACTION COMPLAINT
FOR DAMAGES AND INJUNCTIVE RELIEF- 8
CASE NO. 2:20-CV-01106-RAJ

HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

## Outlet Store in Tulalip, Washington on March 5, 2016

 

## Outlet Store in Woodinville, Washington on April 2, 2019

 

**Outlet Store in North Bend, Washington on April 14, 2019**

 

30.    Decades of academic research has established that the use of reference prices, such as those utilized by Eddie Bauer on its price tags, materially impacts consumers' behavior. A reference price affects a consumer's perception of the value of the transaction, the consumer's willingness to make the purchase, and the amount of money the consumer is willing to pay for the product.[5]

---

[5] See, *e.g.*, Rajesh Chandrashekaran & Dhruv Grewal, *Assimilation of Advertised Reference Prices: The Moderating Role of Involvement*, 79 J. Retailing 53 (2003); Pilsik Choi & Keith S. Coulter, *It's Not All Relative: The Effects of Mental and Physical Positioning of Comparative Prices on Absolute Versus Relative Discount Assessment*, 88 J. Retailing 512 (2012); Larry D. Compeau & Dhruv Grewal, *Comparative Price Advertising: An Integrative Review,* 17 J. Pub. Pol'y & Mktg. 257 (1998); Larry D. Compeau, Dhruv Grewal & Rajesh Chandrashekaran, *Comparative Price Advertising: Believe It or Not*, 36 J. Consumer Aff. 284 (2002); David Friedman, *Reconsidering Fictitious Pricing*, 100 Minn. L. Rev. 921 (2016); Dhruv Grewal & Larry D. Compeau, *Consumer Responses to Price and its Contextual Information Cues: A Synthesis of Past Research, a Conceptual Framework, and Avenues for Further Research*, in 3 Rev. of Mktg. Res. 109 (Naresh K. Malhotra ed., 2007); Daniel J. Howard & Roger A. Kerin, *Broadening the Scope of Reference Price Advertising Research: A Field Study of Consumer Shopping Involvement*, 70 J. Mktg. 185 (2006); Aradhna Krishna, Richard Briesch, Donald R. Lehmann & Hong Yuan, *A Meta-Analysis of the Impact of Price Presentation on Perceived*

**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA  98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1    31.    When a reference price is bona fide and truthful, it may help consumers in

2    making informed purchasing decisions. In contrast, consumers are harmed when retailers, such

3    as Eddie Bauer, advertise their products with inflated false reference prices. The false reference

4    prices deceive consumers, deprive consumers of a fair opportunity to accurately evaluate the

5    offer, and result in purchasing decisions based on false pretenses.

6    32.    False reference prices, such as those employed by Eddie Bauer, cause

7    consumers to pay more than they otherwise would have paid for products and to buy products

8    that they otherwise would not have bought.

9    33.    False reference prices also fraudulently increase consumer demand for products.

10    This fraud-on-the-market shifts the demand curve and enables retailers to charge higher prices

11    than they otherwise could have charged. Without the false discounts, Eddie Bauer would have

12    had to charge less to consumers to sell those same products.

13    34.    In addition to harming consumers, the practice of employing false reference

14    prices also negatively affects the integrity of competition in retail markets. A retailer's use of

15    false reference prices constitutes an unfair method of competition and harms honest

16    competitors that sell the same or similar products, or otherwise compete in the same market,

17    using valid and accurate reference prices. Businesses who play by the rules—and the investors

18    in those businesses—are penalized if the unlawful advertising practices of their competitors go

19    unchecked.

20    35.    Federal and state courts have articulated the abuses that flow from false

21    reference pricing practices. For example, the United States Court of Appeals for the Ninth

22    Circuit explained: "Most consumers have, at some point, purchased merchandise that was

23    marketed as being 'on sale' because the proffered discount seemed too good to pass up.

24    Retailers, well aware of consumers' susceptibility to a bargain, therefore have an incentive to

25    lie to their customers by falsely claiming that their products have previously sold at a far higher

26

27    *Savings*, 78 J. Retailing 101 (2002); Balaji C. Krishnan, Sujay Dutta & Subhash Jha,
     *Effectiveness of Exaggerated Advertised Reference Prices: The Role of Decision Time
     Pressure*, 89 J. Retailing 105 (2013); and Tridib Mazumdar, S. P. Raj & Indrahit Sinha,
28    *Reference Price Research: Review and Propositions*, 69 J. Mktg. 84 (2005).

FIRST AMENDED CLASS ACTION COMPLAINT
FOR DAMAGES AND INJUNCTIVE RELIEF- 11
CASE NO. 2:20-CV-01106-RAJ

'original' price in order to induce customers to purchase merchandise at a purportedly marked-down 'sale' price." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013).

36. Oregon law prohibits false reference pricing practices such as those perpetrated by Eddie Bauer. Oregon's Unlawful Trade Practices Act (UTPA) broadly prohibits: "Mak[ing] false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions." ORS 646.608(1)(j).

37. Oregon's UTPA explicitly prohibits reference price advertising which uses terms such as "regular," "sale," "originally," and "clearance" where the reference price was not in fact *the retailer's own former price for the product*. ORS 646.608(ee); ORS 646.885(1).

38. Oregon's UTPA also explicitly prohibits reference price advertising which uses terms such as "____ percent discount," "$____ discount," "____ percent off" and/or "$____ off" where the reference price was not in fact *the retailer's own former price* for the product. ORS 646.608(ee); ORS 646.885(2).

39. Oregon's UTPA explicitly prohibits *price comparisons* unless "[t]he seller clearly and conspicuously identifies in the advertisement the origin of the price that the seller is comparing to the seller's current price. The origin of the price that the seller is comparing to the seller's current price includes but is not limited to the seller's former selling price, a manufacturer's list price or a competitor's price for the same real estate, goods or services." ORS 646.883(1). **The "compliance is established based on facts provable by the seller." ORS 646.883(2).**

40. However, since Eddie Bauer began adding the phrase "Comparable Value" to the ticketed prices on its product tags in January 2020 (and later on its Outlet website which was launched around November 2020 at www.eddiebaueroutlet.com), Eddie Bauer has failed to clearly and conspicuously identify in the advertisement the origin of the price that Eddie Bauer is comparing to its current, purportedly "sale," price—in violation of the explicit provisions of Oregon's UTPA.

41. Indeed, ***as this Court has already found***, simply adding the phrase "Comparable Value" next to the ticketed prices printed on its product tags (which Eddie Bauer began doing

FIRST AMENDED CLASS ACTION COMPLAINT
FOR DAMAGES AND INJUNCTIVE RELIEF- 12
CASE NO. 2:20-CV-01106-RAJ

**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

in January 2020) does not make Eddie Bauer's perpetual discount advertising scheme suddenly lawful under the Oregon UTPA:

> [A]ccording to the [Oregon] UTPA, Eddie Bauer must provide the *origin* of any such reference price, Or. Rev. Stat. § 646.885(2). An opaque reference to a 'comparable value' does not meet this requirement. Nor does a reference on the tag to a comparable value, without support for its basis, reduce the injury Ms. Clark would suffer [in potential future purchases]. An inflated reference price, regardless of the source, may still cause a consumer such as Ms. Clark confusion in that she may still believe she is getting a deal when, in fact, she is not.

Order at Docket No. 27 at 5–6 (emphasis in original).

42.     Eddie Bauer's advertised reference prices and discounts (including its percentage-off and dollars-off discounts) in its Outlet Stores and on its Outlet website violated and continue to violate Oregon law because, based on the investigation of Plaintiff's counsel, Eddie Bauer's advertised and ticketed reference prices are inflated and fictitious; Eddie Bauer fails to clearly and conspicuously identify the origin of the current "Comparable Value" ticketed reference prices in its advertising; and in all cases, Eddie Bauer's advertised percentage-off and dollars-off discounts are false.

43.     Eddie Bauer's discounts and reference prices are false because Eddie Bauer rarely if ever offers the products offered at its Outlet Stores or the Outlet website at the advertised and ticketed price in *any* of its retail or website channels. Likewise, the ticketed prices continue to be phony, even with the new language "Comparable Value" appended to them. Eddie Bauer invents inflated and fictitious ticketed prices so that it can advertise perpetual store-wide "sale" events and product discounts from those ticketed prices to induce customers to purchase its products.

44.     Nearly all of the products (more than 90%) offered at the Outlet Stores and on the Outlet website are manufactured exclusively for the Outlet Stores and have never been offered at the mainline (non-outlet) Eddie Bauer retail stores or on the Eddie Bauer mainline (non-outlet) website at www.eddiebauer.com. For this greater-than-90% of products which are Outlet-exclusive, the advertised discounts are false because Eddie Bauer *never*—not even for a single day—offered the products at the ticketed price. And since January 2020, when Eddie Bauer first began adding the phrase "Comparable Value" to its ticketed prices in its Outlet

FIRST AMENDED CLASS ACTION COMPLAINT
FOR DAMAGES AND INJUNCTIVE RELIEF- 13
CASE NO. 2:20-CV-01106-RAJ

**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Stores, those ticketed prices continue to be false because the "Comparable Value" phrase is phony.

45.   For the less-than-10% of products offered at the Outlet Stores that at one time may have been previously offered in Eddie Bauer's mainline retail stores (Eddie Bauer typically displays these products in the Outlet Stores on a "Clearance" rack), Eddie Bauer never offered the products at ticketed price in its Outlet Stores, and rarely if ever previously offered the products at the ticketed price in its mainline Eddie Bauer retail stores or on its mainline www.eddiebauer.com website.

46.   Plaintiff's allegations concerning Eddie Bauer's false discount advertising at its Outlet Stores and on its Outlet website are based in part on Plaintiff's counsel's repeated visits and surveys of several Eddie Bauer Outlet Stores, in addition to counsel's investigation of the www.eddiebauer.com and www.eddiebaueroutlet.com websites as further described below. Counsel's in-store investigation shows that the greater-than-90% of products that are Outlet-exclusive are <u>always</u> advertised with large discounts, and are never—not even for a single day—offered at the reference price.

47.   In addition, regarding the less-than-10% of products which are not exclusive to the Outlet (i.e., "Clearance" rack items which may have been previously offered by mainline Eddie Bauer retail stores or on www.eddiebauer.com), counsel's investigation has confirmed that those products not only have never been offered at Outlet Stores or website at the ticketed reference price; the products have likewise rarely if ever been previously offered at the ticketed price at mainline Eddie Bauer retail stores or website.

48.   Plaintiff's counsel has been extensively monitoring Eddie Bauer's websites on a daily basis via a proprietary website and data harvesting system for over 8 years. Specifically, Plaintiff's counsel has been monitoring and harvesting the prices for the mainline website (www.eddiebauer.com) since January 16, 2016, and has been monitoring and harvesting the prices for the Outlet website (www.eddiebaueroutlet.com) since it was launched in November 2020. Plaintiff's counsel has assembled a comprehensive historical database of daily prices and screenshots of millions of daily product offerings for tens of thousands of products over this

**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA  98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

period. Counsel's simultaneous in-store investigation meanwhile found that the Eddie Bauer websites offer the same products that are available in the Eddie Bauer mainline (non-outlet) and Outlet retail stores.

49.     Based on counsel's investigation, the listed reference and sale prices on the Outlet website (which was launched by Eddie Bauer in November 2020), as well as the sale events advertised on the Outlet website, are the same or substantially the same as the ticketed reference prices, sale prices, and sale events advertised in Eddie Bauer's brick-and-mortar Outlet Stores. Likewise, counsel's investigation found that the listed reference and sale prices on the mainline website (www.eddiebauer.com), as well as the sale events advertised on the mainline website, are the same or substantially the same as the prices and sale events advertised in Eddie Bauer's mainline brick-and-mortar stores.

50.     Counsel's investigation shows that Eddie Bauer advertises, on its websites and in its retail stores, continual and overlapping store-wide sale events of 30% to 50% off all of its products. For the Outlet Stores and the Outlet website, there are <u>never</u> any breaks at all between the continual and overlapping store-wide sale events. For the mainline Eddie Bauer stores and the mainline www.eddiebauer.com website, there are very rarely any breaks between these multi-month sale event periods—and when such breaks occur in its mainline stores and on its mainline website, they are only for a few days, and on those days Eddie Bauer continues to offer over two-thirds of the products at a discounted price.

51.     Thus, even for those less-than-10% of Eddie Bauer Outlet products—displayed on the Outlet "Clearance" racks—which may have been previously offered in the mainline retail (non-outlet) Eddie Bauer stores, the ticketed reference prices are likewise false because even when the products were offered in those other channels they <u>still</u> had been rarely if ever offered at the ticketed price—and never in good faith.

52.     The false reference price and false discount representations by Eddie Bauer at its Outlet Stores were material to the decisions of consumers to purchase each product. Because of the false reference price and false discount representations, consumers reasonably believed they would be receiving significant savings if they purchased these products, and consumers

FIRST AMENDED CLASS ACTION COMPLAINT
FOR DAMAGES AND INJUNCTIVE RELIEF- 15
CASE NO. 2:20-CV-01106-RAJ

**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA  98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1  purchased these products at the Outlet Stores on the basis of these representations in order to

2  enjoy the purported discounts.

3  53.    Eddie Bauer's marketing plan is to deceive its customers into believing that its

4  products are worth, and have a value equal to, the inflated ticketed price, and that the lower

5  advertised sale price represents a special bargain. In fact, not only are the advertising savings

6  always false; in many cases the "sale" price is actually <u>higher</u> than Eddie Bauer's true regular

7  selling price for the product.

8  54.    The false or misleading nature of Eddie Bauer's reference prices and discounts

9  was, at all relevant times, masked or concealed such that an ordinary consumer exercising

10  reasonable care under all the circumstances would not have known or discovered their false or

11  misleading nature.

12  55.    As a direct and proximate result of Eddie Bauer's acts and omissions, all

13  consumers who have purchased a product from an Eddie Bauer Outlet Store in Oregon that was

14  advertised with a reference price or discount (which was false as a matter of course) have been

15  harmed and have suffered ascertainable losses.

16  56.    Eddie Bauer continues to advertise false reference prices and false discounts at

17  its Oregon Outlet Stores (and also on the Outlet website viewed by Oregon consumers) to this

18  day. There is no reason to believe that Eddie Bauer will voluntarily and permanently cease its

19  unlawful practices. Moreover, in the unlikely event that Eddie Bauer were to cease its unlawful

20  practices, Eddie Bauer can and is likely to re-commence these unlawful practices.

21  57.    In acting toward consumers and the general public in the manner alleged herein,

22  Eddie Bauer acted with and was guilty of malice, fraud, and oppression and acted in a manner

23  with a strong and negative impact upon Plaintiff, the Class, and the public.

24  **PLAINTIFF'S FACTUAL ALLEGATIONS**

25  58.    On March 22, 2017, Plaintiff Susan Clark visited the Eddie Bauer Outlet Store

26  located at 450 NW 257th Avenue, Suite 200, Troutdale, Oregon 97060.

27  59.    Ms. Clark saw prominent signs on the Eddie Bauer Outlet Store's windows and

28  posted throughout the store advertising large percentage-off discounts and savings. Ms. Clark

FIRST AMENDED CLASS ACTION COMPLAINT
FOR DAMAGES AND INJUNCTIVE RELIEF- 16
CASE NO. 2:20-CV-01106-RAJ

**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA  98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

reasonably believed that Eddie Bauer was having a special store-wide sale and that the advertised discounts and promised savings were genuine.

60. Ms. Clark saw an Eddie Bauer Men's Long Sleeve Fast Fleece ¼ Zip ("Fleece Zip") for sale. Ms. Clark viewed signage which stated that the Fleece Zip was on sale for 50% off, at a selling price of $19.99. Ms. Clark viewed the product tag attached to the Fleece Zip, which showed a ticketed price of $39.99.

61. Ms. Clark also saw an Eddie Bauer Women's Jacket Microlight Down ("Microlight Jacket") for sale. Ms. Clark viewed signage which stated that the Microlight Jacket was on sale for 50% off, at a selling price of $49.99. Ms. Clark viewed the product tag attached to the Microlight Jacket, which showed a ticketed price of $99.99.

62. Ms. Clark reasonably believed that the ticketed prices printed on the product tags of Eddie Bauer's products represented Eddie Bauer's usual and normal selling prices for the products.

63. Ms. Clark reasonably believed that the regular and usual price for the Fleece Zip was the $39.99 price printed on the tag (and from which the "50% off" discount was being calculated). Ms. Clark reasonably believed that the Fleece Zip was thereby worth and had a value of $39.99.

64. Ms. Clark reasonably believed that the regular and usual price for the Microlight Jacket was the $99.99 ticketed price printed on the product tag. Ms. Clark reasonably believed that the Microlight Jacket was thereby worth and had a value of $99.99.

65. Ms. Clark reasonably believed that the $19.99 advertised sale price for the Fleece Zip and the $49.99 advertised sale price for the Microlight Jacket represented huge special discounts of "50% off" Eddie Bauer's normal selling prices for the products.

66. Relying on Eddie Bauer's discount representations and advertised ticketed reference prices, Ms. Clark purchased the Fleece Zip and the Microlight Jacket.

67. On the paper receipt that Ms. Clark received at the cash register and which Ms. Clark viewed, Eddie Bauer made additional product pricing and value representations regarding the products. Eddie Bauer printed on the receipt that the price for the Fleece Zip was "1 @

FIRST AMENDED CLASS ACTION COMPLAINT
FOR DAMAGES AND INJUNCTIVE RELIEF- 17
CASE NO. 2:20-CV-01106-RAJ

**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

39.99", and directly below that Eddie Bauer printed that Ms. Clark was enjoying an "Item Discount 50.00%" of "(20.00)". Eddie Bauer printed on the receipt that the price for the Microlight Jacket was "1 @ 99.99", and directly below that Eddie Bauer printed that Ms. Clark was enjoying an "Item Discount 50.00%" of "(50.00)". Further down on the receipt, Eddie Bauer stated "Total Discount (70.00)". These representations on the receipt further indicated to Ms. Clark that the Fleece Zip had a value of, and was normally and usually sold for, $39.99, and that the Microlight Jacket had a value of, and was normally and usually sold for, $99.99, and that the lower prices she paid were true bargain prices after Eddie Bauer applied a "50% off" discount on the products.

68.    However, Eddie Bauer's reference prices and advertised discounts were false and deceptive. Based on the investigation of Plaintiff's counsel, both the Fleece Zip and the Microlight Jacket were Eddie Bauer Outlet-exclusive items; they were never offered or sold anywhere else. And in reality and unbeknownst to Ms. Clark, Eddie Bauer had <u>never</u> offered the Fleece Zip for the ticketed and purported regular price of $39.99 or the Microlight Jacket for the ticketed and purported regular price of $99.99. In fact, the products were <u>always</u> offered at discounts of between 40% to 70% off the ticketed price printed on their tags.

69.    Eddie Bauer had defrauded Ms. Clark. Ms. Clark did not receive the discounts that Eddie Bauer represented to and promised her. The Fleece Zip was not worth the $39.99 price, and the Microlight Jacket was not worth the $99.99 price, that Eddie Bauer had led her to believe.

70.    On April 5, 2018, Ms. Clark visited the Eddie Bauer Outlet Store located at 1001 North Arney Road, Suite 600, Woodburn, Oregon 97071. Ms. Clark visited the Eddie Bauer Outlet Store in order to exchange the Microlight Jacket that she had previously purchased because it had a broken zipper. However, the store no longer carried the Microlight Jacket that she was returning, so she was instead given a $49.99 credit usable towards another purchase.

71.    While browsing Eddie Bauer's selection of women's jackets to find a replacement, Ms. Clark went to the "Clearance" section of the store and viewed an Eddie Bauer Women's MicroTherm StormDown Hooded Jacket, color Purple Haze ("StormDown Jacket").

72.    Ms. Clark viewed the product tag attached to the StormDown Jacket, which showed two prices: a ticketed price of $229.00, and a second, reduced price of $199.99 on a red sticker. Ms. Clark also viewed adjacent signs which indicated that the StormDown Jacket was on sale for 50% off the lowest price marked on the tag.

73.    Based on Eddie Bauer's representations, Ms. Clark reasonably believed that Eddie Bauer had regularly offered the StormDown Jacket for the ticketed $229.00 price in the past, and then recently at $199.99, and that Eddie Bauer was now offering the jacket at a final "Clearance" sale price of $99.99.

74.    Based on Eddie Bauer's representations, Ms. Clark reasonably believed that the StormDown Jacket had a value of, and was worth, at least $199.99.

75.    Ms. Clark reasonably believed that the $99.99 "Clearance" sale price of the StormDown Jacket represented a discount of 50% off Eddie Bauer's most recent regular selling price of $199.99 for the jacket, and a discount of more than 50% off the ticketed regular past selling price of the jacket of $229.00.

76.    Relying on Eddie Bauer's discount representations and advertised reference prices, Ms. Clark purchased the StormDown Jacket. Ms. Clark applied her $49.99 exchange credit towards the $99.99 purchase price and paid the balance on her debit card.

77.    On the paper receipt that Ms. Clark received at the cash register and which Ms. Clark viewed, Eddie Bauer made additional product pricing and value representations regarding the StormDown Jacket. Eddie Bauer printed on the receipt that the price for the StormDown Jacket was "1 @ 199.99", and directly below that Eddie Bauer printed that Ms. Clark was enjoying an "Item Discount 50.00%" of "(100.00)". These representations on the receipt further indicated to Ms. Clark that the StormDown Jacket had a value of, and was recently normally and usually sold for, $199.99, and that the "Clearance" price she paid was a true bargain price after Eddie Bauer applied a "50% off" discount.

HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA  98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

78.    However, Eddie Bauer's reference prices and advertised discounts for the StormDown Jacket were false and deceptive. In reality, and unbeknownst to Ms. Clark, based on counsel's investigation Eddie Bauer had not offered the StormDown Jacket in the "Purple Haze" color (or in any color), in <u>any</u> of its sales channels (including not in its Eddie Bauer Outlet stores, not in its mainline Eddie Bauer retail stores, and not on its website) at the price of $199.99 or greater at <u>any</u> time in the immediately preceding 600 days. In fact, Eddie Bauer had <u>always</u> offered the StormDown Jacket at a price far less than $199.99 over the preceding 600 days.

79.    Eddie Bauer had defrauded Ms. Clark. Ms. Clark did not receive the discount that Eddie Bauer represented and promised. The StormDown Jacket was not worth either the $199.99 or the $229.00 price that Eddie Bauer had led her to believe.

80.    Eddie Bauer's advertised ticketed prices and its advertised discounts of 50% off or more were material misrepresentations and inducements to both Ms. Clark's March 22, 2017, purchase and Ms. Clark's April 5, 2018, purchase.

81.    These misrepresentations by Eddie Bauer are material misrepresentations, in that they are the type of representations on which a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

82.    Ms. Clark reasonably relied on Eddie Bauer's material misrepresentations regarding the reference prices and advertised discounts for the Fleece Zip, the Microlight Jacket, and the StormDown Jacket.

83.    If Ms. Clark had known the truth, she would not have purchased the products at the prices she paid.

84.    As a direct and proximate result of Eddie Bauer's acts and omissions, Ms. Clark was harmed, suffered an injury-in-fact, and lost money or property.

85.    When Ms. Clark shopped at Eddie Bauer, she had no suspicion that Eddie Bauer's advertising of its discounts was false. Eddie Bauer gave Ms. Clark no reason to be suspicious.

**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA  98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

86.     Ms. Clark first learned of Eddie Bauer's false advertising scheme on March 13, 2020. On that day, Ms. Clark saw a class action lawsuit investigation advertisement on TopClassActions.com that discussed Eddie Bauer's false advertising scheme and the potential representation of persons who had purchased products from Eddie Bauer that were falsely advertised as being on sale at a discount. Ms. Clark viewed the lawsuit investigation webpage advertisement to learn more. Prior to reading the advertisement, Ms. Clark did not know or suspect that Eddie Bauer was engaging in a false advertising scheme or that she may have been a victim of the scheme.

87.     Upon reading the advertisement on March 13, 2020, Ms. Clark for the first time had a reason to suspect that she might have been harmed by Eddie Bauer and its scheme of advertising false discounts. Ms. Clark recalled that she had previously purchased products from Eddie Bauer Outlet Stores that were advertised with significant discounts, and she was now upset to learn that those discounts may have been false and that those products may not have been worth the amount that Eddie Bauer represented to her. Ms. Clark completed and submitted a form on the lawsuit investigation webpage on that day, March 13, 2020, to learn if she may qualify to be part of the lawsuit.

88.     Likewise, at the time of the filing of the original Complaint in this action, the members of the proposed Class were not aware of, had no suspicion of the existence of, and had no reason to be aware or suspicious of Eddie Bauer's scheme of advertising false discounts.

89.     Ms. Clark has a legal right to rely now, and in the future, on the truthfulness and accuracy of Eddie Bauer's representations regarding the advertised reference prices and discounts at its Oregon Outlet Stores.

90.     Ms. Clark would shop at one of Eddie Bauer's Oregon Outlet Stores again or on the Outlet website if she could have confidence regarding the truth of Eddie Bauer's prices and the value of its products.

91.     Ms. Clark will be harmed if, in the future, she is left to guess as to whether Eddie Bauer is providing a legitimate sale or not, and whether products are actually worth the amount that Eddie Bauer is representing.

HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA  98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1      92.     If Ms. Clark were to purchase again from an Oregon Outlet Store or from the

2  Outlet website without Eddie Bauer having changed its unlawful and deceptive conduct alleged

3  herein, Ms. Clark would be harmed on an ongoing basis and/or would be harmed once or more

4  in the future.

5      93.     The deceptive practices and policies alleged herein, and experienced directly by

6  Ms. Clark, are not limited to any single product or group of products. Rather, Eddie Bauer's

7  deceptive advertising, sales practices, and printed sales receipts, which advertise and state false

8  reference prices and false percentage-off and dollars-off discounts, were, and continue to be,

9  systematic and pervasive across all of Eddie Bauer's products at its Outlet Stores in Oregon and

10  on its Outlet website which is viewed and patronized by residents of Oregon.

11  **CLASS ACTION ALLEGATIONS**

12      94.     Plaintiff Clark brings this class action lawsuit on behalf of herself and the

13  members of the following Oregon class (the "Class"):

14            **All persons who, within the applicable limitations period,**
             **purchased from an Eddie Bauer Outlet Store located in the**

15            **State of Oregon one or more products which were advertised**
             **or promoted by displaying or disseminating a reference price**

16            **or discount.**

17      95.     The applicable limitations period referred to by the class definition is expansive

18  and extends back years or decades based on the "delayed discovery" rule explicitly provided

19  for in the Oregon Unlawful Trade Practices Act. *See* ORS 646.638(6). Eddie Bauer's unlawful

20  false discounting practices have been pervasive at its Oregon Outlet Stores—and have been at

21  the core of its marketing plan—for decades (the exact length of time will be subject to

22  discovery and proof). By Eddie Bauer's design, the false advertising scheme by its very nature

23  is hidden and impossible for the typical consumer to discover. Plaintiff and the members of the

24  Class did not know, and could not have known, that these ticketed reference prices and

25  discount representations were false. Thus, the applicable limitations period—and the

26  corresponding class period—extends back to the very first date that Eddie Bauer began

27  engaging in the unlawful conduct alleged herein.

28

**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

96.     Specifically excluded from the Class are Defendants, any entity in which any Defendant has a controlling interest or which has a controlling interest in any Defendant, Defendants' agents and employees and attorneys, the bench officers to whom this civil action is assigned, and the members of each bench officer's staff and immediate family.

97.     **Numerosity.** Plaintiff does not know the exact number of Class members but is informed and believes that the Class easily comprises thousands of individuals. As such, Class members are so numerous that joinder of all members is impracticable.

98.     **Commonality and Predominance.** All claims in this action arise exclusively from the uniform policies and procedures of Eddie Bauer as outlined herein. This action involves multiple common questions which are capable of generating class-wide answers that will drive the resolution of this case. These common questions include, but are not limited to, the following:

a.      Eddie Bauer's policies and actions regarding its advertising for and in its Oregon Outlet Stores;

b.      Eddie Bauer's policies and actions regarding its advertising for its Outlet website;

c.      Eddie Bauer's policies and actions regarding its advertising for and in its mainline (non-outlet) Eddie Bauer retail stores and website;

d.      How long Eddie Bauer has been engaging in the false reference price and false discount advertising practices alleged herein;

e.      Whether a reasonable consumer is likely to be deceived by Eddie Bauer's conduct and omissions alleged herein;

f.      Whether the alleged conduct of Eddie Bauer violates the Oregon Unlawful Trade Practices Act, ORS § 646.605 *et seq.*;

g.      Whether Plaintiff and the Class have suffered ascertainable losses as a result of Eddie Bauer's unlawful conduct;

h.      Whether Eddie Bauer should be ordered to pay statutory damages of $200 to Plaintiff and to each Class member; and/or

FIRST AMENDED CLASS ACTION COMPLAINT
FOR DAMAGES AND INJUNCTIVE RELIEF- 23
CASE NO. 2:20-CV-01106-RAJ

**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA  98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

i. Whether Eddie Bauer should be enjoined from further engaging in the unlawful conduct alleged herein.

99. **Typicality.** Plaintiff's claims are typical of Class members' claims. Plaintiff is a member of the Class she seeks to represent. All claims of Plaintiff and the Class arise from the same course of conduct, policy and procedures as outlined herein. Plaintiff and Class members all suffered an ascertainable loss as a result of Eddie Bauer's unlawful pricing practices and schemes alleged herein.

100. **Adequacy.** Plaintiff will fairly and adequately protect Class members' interests. Plaintiff has no interests antagonistic to Class members' interests. Plaintiff has retained counsel who has considerable experience and success in prosecuting complex class action and consumer protection cases.

101. **Superiority.** A class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. Each Class member's interests are small compared to the burden and expense required to litigate each of his or her claims individually, so it would be impractical and would not make economic sense for Class members to seek individual redress for Eddie Bauer's conduct. Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the judicial system. Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct. A single adjudication would create economies of scale and comprehensive supervision by a single judge. Moreover, Plaintiff does not anticipate any difficulties in managing a class action trial in this case.

102. By its conduct and omissions alleged in this Complaint, Eddie Bauer has acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief and/or declaratory relief is appropriate respecting the Class as a whole.

103. Without the proposed class action, Eddie Bauer will likely retain the benefits of its wrongdoing and will continue the complained-of practices, which will result in further damages to Plaintiff and Class members.

**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA  98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

104.     The nature of Eddie Bauer's misconduct is non-obvious and/or obscured from public view, and neither Plaintiff nor the members of the Class could have, through the use of reasonable diligence, learned of the accrual of their claims against Eddie Bauer at an earlier time. This Court should apply the delayed discovery rule (which is explicitly provided for in the Oregon Unlawful Trade Practices Act at ORS 646.638(6)) to extend the applicable limitations period—and the corresponding class period—to the date on which Eddie Bauer first began perpetrating the false reference price and false discount advertising scheme alleged herein.

## CAUSES OF ACTION

### COUNT I
### Violation of the Oregon Unlawful Trade Practices Act
### Oregon Revised Statutes § 646.605 *et seq.*

105.     Plaintiff realleges and incorporates by reference all paragraphs alleged hereinbefore.

106.     Plaintiff pleads this count in two separate capacities: in her individual capacity and as a putative class representative serving on behalf of all others similarly situated.

107.     The Oregon Unfair Trade Practices Act (the "UTPA"), ORS § 646.605 *et seq.*, is Oregon's principal consumer protection statute. As the Supreme Court of Oregon has explained:

> **The civil action authorized by ORS 646.638 is designed to encourage private enforcement of the prescribed standards of trade and commerce in aid of the act's public policies as much as to provide relief to the injured party. This is apparent from the section itself. It allows recovery of actual damages or $200, whichever is greater, plus punitive damages, costs, and attorney fees. . . . The evident purpose is to encourage private actions when the financial injury is too small to justify the expense of an ordinary lawsuit . . . . the legislature was concerned as much with devising sanctions for the prescribed standards of trade and commerce as with remedying private losses, and that such losses therefore should be viewed broadly. The private loss indeed may be so small that the common law likely would reject it as grounds for relief, yet it will support an action under the statute.**

*Weigel v. Ron Tonkin Chevrolet Co.*, 298 Or. 127, 134–36, 690 P.2d 488, 493–94 (1984). A private plaintiff may also seek an injunction "as may be necessary to ensure cessation of unlawful trade practices." ORS 646.636.

**HATTIS & LUKACS**
11711 SE 8ᵗʰ Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

108.     Defendants Eddie Bauer LLC and SPARC Group LLC (collectively, "Eddie Bauer") are each a "person," as defined by ORS 646.605(4).

109.     Eddie Bauer is engaged in "trade" and "commerce" in Oregon by offering for sale goods with reference prices and discounts that directly or indirectly affect the people of Oregon in its Outlet Stores and on its Outlet website, as defined by ORS 646.605(8).

110.     The products advertised by Eddie Bauer with ticketed reference prices and discounts are "goods" that are or may be obtained primarily for personal, family or household purposes, as defined by ORS 646.605(6).

111.     Plaintiff and the Class purchased the goods advertised by Eddie Bauer with reference prices and discounts for personal, family or household purposes.

112.     The unlawful methods, acts and practices pled herein were committed in the course of Eddie Bauer's business. ORS 646.608(1).

113.     Eddie Bauer's unlawful methods, acts and practices pled herein were "willful violations" of ORS 646.608 because Eddie Bauer knew or should have known that its conduct was a violation, as defined by ORS 646.605(10).

114.     Eddie Bauer's representations of reference prices and discounts are "advertisements" as defined by ORS 646.881(1).

115.     Eddie Bauer's use of reference prices and advertised discounts are "price comparisons" as defined by ORS 646.881(2).

116.     Eddie Bauer's ticketed prices on its Outlet Store product tags and listed on its Outlet website are representations of Eddie Bauer's own "former prices," or in the case of labeled introductory advertisements are representations of Eddie Bauer's "future price," as defined by ORS 646.885.

117.     Eddie Bauer's methods, acts and practices, including Eddie Bauer's misrepresentations, active concealment and failures to disclose, violated and continue to violate the UTPA in ways including, but not limited to, the following:

1.     Eddie Bauer represented its goods had characteristics or qualities that the goods did not have (specifically, Eddie Bauer represented that the goods had a value equal to

**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

the ticketed reference price, when in fact they did not and instead had a much lower true value). ORS 646.608(1)(e);

2. Eddie Bauer advertised its goods with intent not to provide the goods as advertised (specifically, Eddie Bauer represented that the goods had a value equal to the ticketed reference price, when in fact they did not and instead had a much lower true value). ORS 646.608(1)(i);

3. Eddie Bauer made false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions. ORS 646.608(1)(j);

4. Eddie Bauer engaged in price comparison advertising in violation of ORS 646.883(1) by failing to clearly and conspicuously identify in the advertisement the origin of the price that Eddie Bauer was comparing to Eddie Bauer's current price;

5. Eddie Bauer engaged in price comparison advertising in violation of ORS 646.883(2) by failing to comply with ORS 646.608(1)(j) and ORS 646.608(4). ORS 646.608(ee);

6. Eddie Bauer engaged in price comparison advertising in violation of ORS 646.885(1) by using terms such as "regular," "reduced," "sale," "usually," "originally," "clearance," "liquidation," and/or "formerly" where the reference price was not in fact Eddie Bauer's own former price, or in the case of introductory advertisements, was not Eddie Bauer's future price. ORS 646.608(ee);

7. Eddie Bauer engaged in price comparison advertising in violation of ORS 646.885(2) by using terms such as "____ percent discount," "$____ discount," "____ percent off" and/or "$____ off" where the reference price was not in fact Eddie Bauer's own former price, or in the case of introductory advertisements, was not Eddie Bauer's future price. ORS 646.608(ee); and

8. Eddie Bauer engaged in other unfair or deceptive conduct in trade or commerce, as described herein. ORS 646.608(1)(u); ORS 646.608(4).

118. With respect to omissions, Eddie Bauer at all relevant times had a duty to disclose the information in question because, inter alia: (a) Eddie Bauer had exclusive

**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

knowledge of material information that was not known to Plaintiff and the Class; (b) Eddie Bauer concealed material information from Plaintiff and the Class; and/or (c) Eddie Bauer made partial representations which were false and misleading absent the omitted information.

119.     Eddie Bauer's misrepresentations and nondisclosures deceive and have a tendency to deceive a reasonable consumer and the general public.

120.     Eddie Bauer's misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

121.     Eddie Bauer engaged in the reckless or knowing use or employment of the unlawful methods, acts or practices alleged herein which have been declared unlawful by ORS 646.608.

122.     As a direct, substantial and/or proximate result of Eddie Bauer's conduct, Plaintiff and Class members suffered ascertainable losses and injury to business or property.

123.     Plaintiff and Class members would not have purchased the products at the prices they paid, if they had known that the advertised reference prices and discounts were false.

124.     Plaintiff and Class members paid more than they otherwise would have paid for the products they purchased from Eddie Bauer.

125.     Eddie Bauer's false reference pricing scheme fraudulently increased demand from consumers. This fraud-on-the-market shifted the demand curve and enabled Eddie Bauer to charge higher prices than it otherwise could have charged to all of its Outlet customers. Without the false discounts, Eddie Bauer would have had to charge **less** to consumers to sell those same products.

126.     The products that Plaintiff and Class members purchased were not, in fact, worth as much as Eddie Bauer represented them to be worth.

127.     Plaintiff seeks, on behalf of herself and for each member of the Class: (1) the greater of statutory damages of $200 or actual damages; (2) punitive damages; (3) appropriate equitable relief; and (4) attorneys' fees and costs. ORS 646.638(3); ORS 646.638(8).

**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA  98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

128. The unlawful acts and omissions pled herein were, are, and continue to be part of a pattern or generalized course of conduct. Eddie Bauer's conduct is ongoing and is likely to continue and recur absent a permanent injunction. Accordingly, Plaintiff seeks an order enjoining Eddie Bauer from committing such unlawful practices, including from failing to clearly and conspicuously identify in the advertisement the origin of the price that Eddie Bauer is comparing to the current price offered in Eddie Bauer Outlet Stores or on the Outlet website. ORS 646.638(1); ORS 646.638(8)(c); ORS 646.636.

129. **Permanent injunctive relief.** The balance of the equities favors the entry of permanent injunctive relief against Eddie Bauer. Plaintiff, the Class members and the general public will be irreparably harmed absent the entry of permanent injunctive relief against Eddie Bauer. Plaintiff, the Class members and the general public lack an adequate remedy at law. A permanent injunction against Eddie Bauer is in the public interest. Eddie Bauer's unlawful behavior is ongoing as of the date of the filing of this First Amended Complaint and as of the date of the filing of the original Complaint in this action. If not enjoined by order of this Court, Eddie Bauer will or may continue to injure Plaintiff and Oregon consumers through the misconduct alleged herein. Absent the entry of a permanent injunction, Eddie Bauer's unlawful behavior will not cease and, in the unlikely event that it voluntarily ceases, it is capable of repetition and is likely to reoccur.

130. Eddie Bauer's addition, starting in January 2020, of the phrase "Comparable Value" next to the ticketed prices printed on its product tags was simply a continuation of the same false discount advertising scheme. As the **Ninth Circuit Court of Appeals recognized** in its January 17, 2024, Memorandum in this case, "Eddie Bauer's new policy [of using 'Comparable Value'] only changes a single component of what Clark alleges to be a broader false advertising scheme consisting of misleading signage, tags, and receipts." Docket No. 33 at 7.

131. And **as this Court found**, under the Oregon UTPA, "Eddie Bauer must provide the *origin* of any such reference price... An opaque reference to a 'comparable value' does not meet this requirement. Nor does a reference on the tag to a comparable value, without support

for its basis, reduce the injury Ms. Clark would suffer [in potential future purchases]. An inflated reference price, regardless of the source, may still cause a consumer such as Ms. Clark confusion in that she may still believe she is getting a deal when, in fact, she is not." Order at Docket No. 27 at 5–6 (emphasis in original).

132.    Plaintiff would shop at one of Eddie Bauer's Oregon Outlet Stores again or on the Outlet website if she could have confidence regarding the truth of Eddie Bauer's prices and the value of its products.

133.    Ms. Clark will be harmed if, in the future, she is left to guess as to whether Eddie Bauer is providing a legitimate sale or not, and whether products are actually worth the amount that Eddie Bauer is representing.

134.    If Ms. Clark were to purchase again from an Oregon Outlet Store or from the Outlet website without Eddie Bauer having changed its unlawful and deceptive conduct alleged herein, Ms. Clark would be harmed on an ongoing basis and/or would be harmed once or more in the future.

135.    Eddie Bauer's conduct has caused substantial injury to the general public. Plaintiff individually seeks public injunctive relief to protect the general public by putting an end to Eddie Bauer's false reference price advertising, false discounts and omissions.

136.    **Delayed Discovery Rule.** This action was brought "within one year after the discovery of the unlawful method, act or practice." ORS 646.6.

137.    The applicable limitations period is expansive and extends back decades based on the "delayed discovery" rule explicitly provided for in the Oregon Unlawful Trade Practices Act at ORS 646.638(6). Eddie Bauer's unlawful false discounting practices have been pervasive at its Oregon Outlet stores—and at the core of its marketing plan—for decades (the exact length of time will be subject to discovery and proof).

138.    Plaintiff and the Class members did not know, and could not have known, that these ticketed reference prices and discount representations were false. As the Oregon Supreme Court has explained, "In general terms, a cause of action does not accrue under the discovery rule until the claim has been discovered or, in the exercise of reasonable care, should have been

FIRST AMENDED CLASS ACTION COMPLAINT
FOR DAMAGES AND INJUNCTIVE RELIEF- 30
CASE NO. 2:20-CV-01106-RAJ

**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA  98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

discovered." *FDIC v. Smith* 328 Or. 420, 428, 980 P.2d 141 (1999). *See also Saenz v. Pittenger*, 78 Or.App. 207, 211–12, 715 P.2d 1126 (1986) (UTPA statute of limitations begins running when plaintiff knows or should have known of the allegedly unlawful conduct).

139.     When Plaintiff shopped at the Eddie Bauer Outlet Stores, she had no suspicion that Eddie Bauer's advertising of its discounts was false. Eddie Bauer gave Plaintiff no reason to be suspicious.

140.     Plaintiff first learned of Eddie Bauer's false advertising scheme on March 13, 2020, as further described above at ¶¶ 86–87. Prior to that day, Plaintiff did not know or suspect that Eddie Bauer was engaging in a false discount advertising scheme or that she may have been a victim of the scheme.

141.     Likewise, at the time of the filing of the original Complaint in this action, the members of the proposed Class were not aware of, had no suspicion of the existence of, and had no reason to be aware or suspicious of Eddie Bauer's scheme of advertising false discounts.

142.     Moreover, Plaintiff and the Class could not have, with the exercise of reasonable diligence, discovered Eddie Bauer's false advertising scheme because, by design, its very nature is hidden and impossible for an ordinary consumer to discover. When Plaintiff visited the Eddie Bauer Outlet Stores, she had no way of knowing with the exercise of reasonable diligence the true daily price histories and past selling prices for the products she viewed and purchased. There was no way for her to know with the exercise of reasonable diligence that the ticketed prices printed on the product tags were fictitious and inflated and that the advertised percentage-off and dollars-off savings were false. For example, there was no way for Plaintiff to know with the exercise of reasonable diligence that the Fleece Zip she bought had never been offered for sale at its purported regular price of $39.99—the ticketed price printed on the jacket's product tag.

143.     In fact, Plaintiff's counsel only found evidence for Eddie Bauer's advertising scheme as part of an expensive and expansive multi-year investigation of Eddie Bauer's pricing practices in general (see ¶¶ 46–51 above). Counsel investigated not only Eddie Bauer Outlet Stores but also mainline Eddie Bauer retail stores and the Eddie Bauer websites. This

HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA  98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

investigation included utilizing a proprietary data harvesting system to collect pricing data from Eddie Bauer's websites for tens of thousands of products on a daily basis, including screenshots and extracted reference and sales price information for millions of daily product offerings. The data showed the pervasiveness of Eddie Bauer's false discounting and how the scheme was at the core of Eddie Bauer's marketing plan. This comprehensive big-data analysis conclusively showed that Eddie Bauer never, or almost never, previously offered its Outlet products at the advertised and ticketed reference prices. Since 2016, Plaintiff's counsel has also surveyed Eddie Bauer's retail Outlet Stores and mainline Eddie Bauer stores and found that this false advertising scheme extended to and included <u>all</u> of Eddie Bauer's marketing and pricing in its Outlet retail stores.

144. At the time of the filing of the original Complaint in this action, the members of the Class were not suspicious of and were not aware of and had no reason to be suspicious of or aware of Eddie Bauer's false discount advertising scheme. This is because, as described above, Eddie Bauer's false advertising scheme by its very nature is hidden and impossible for the typical consumer to discover using reasonable diligence. Consumers who shopped at Eddie Bauer Outlet Stores would have no way to know with the exercise of reasonable diligence the true daily price histories and past selling prices for the products they viewed and purchased. Consumers would have no way to know with the exercise of reasonable diligence that the ticketed prices printed on the product tags were fictitious and inflated and that the advertised percentage-off and dollars-off savings were false. Consumers would have no way to know with the exercise of reasonable diligence that Eddie Bauer's false discounting practices extended across all of Eddie Bauer's products and stores and sales channels. Eddie Bauer's scheme was only discovered by Plaintiff's counsel because her counsel conducted an extensive investigation that was beyond the means of an ordinary consumer.

145. The bottom line is that the members of the Class were not suspicious of, have not discovered, and could not have reasonably been suspicious of or have discovered Eddie Bauer's false discount advertising scheme. Based on information and belief, almost all of the

1  Class will learn of the scheme for the very first time upon court-ordered class notice in this

2  case.

3  **PRAYER FOR RELIEF**

4  On behalf of herself and the proposed Class, Plaintiff Susan Clark requests that the

5  Court order relief and enter judgment against Defendants Eddie Bauer LLC and SPARC Group

6  LLC ("Eddie Bauer") as follows:

7  a.  Declare this action to be a proper class action, certify the proposed Class, and

8  appoint Plaintiff and her counsel to represent the Class;

9  b.  Declare that the delayed discovery rule, pursuant to, without limitation, ORS

10  646.638(6), applies and that the applicable limitations period—and the corresponding class

11  period—extends back to the very first date that Eddie Bauer began engaging in the unlawful

12  conduct alleged herein;

13  c.  Order Eddie Bauer to pay statutory damages of $200 or actual damages,

14  whichever is greater, to Plaintiff and to each member of the Class, pursuant to, without

15  limitation, ORS 646.638(1) and 646.638(8)(a);

16  d.  Order Eddie Bauer to pay punitive damages to Plaintiff and the Class in an

17  amount to be determined at trial, pursuant to, without limitation, ORS 646.638(1) and

18  646.638(8)(b);

19  e.  Permanently enjoin Eddie Bauer from engaging in the unlawful conduct alleged

20  herein in their Oregon Outlet Stores and on the Outlet website, including enjoining Eddie Bauer

21  from failing to clearly and conspicuously identify in the advertisement the origin of the price

22  that Eddie Bauer is comparing to Eddie Bauer's current price, pursuant to, without limitation,

23  ORS 646.638(1), ORS 646.638(8)(c) and ORS 646.636;

24  f.  Order that Eddie Bauer maintain the following records for at least two years

25  from the date of each advertisement and/or offer for sale of products at Eddie Bauer's Outlet

26  Stores in Oregon, at its mainline non-outlet retail stores in Oregon, and on its websites, for

27  auditing purposes to ensure compliance with the ordered injunctive relief: (1) the advertised

28  reference price for each product (i.e., the ticketed price from which the discount is calculated);

---

FIRST AMENDED CLASS ACTION COMPLAINT
FOR DAMAGES AND INJUNCTIVE RELIEF- 33
CASE NO. 2:20-CV-01106-RAJ

**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

(2) the source of the reference price including, if the source of the reference price is a different product, the identification of that other product and the evidence of that other product's price; (3) the offer price and/or net selling price of each item; and (4) any sale event discount percentage and/or any other discount that was advertised and/or applicable to each product;

g. Retain jurisdiction to monitor Eddie Bauer's compliance with the permanent injunctive relief;

h. Order any other equitable relief the Court deems appropriate, pursuant to, without limitation, ORS 646.638(1), ORS 646.638(8)(c) and ORS 646.636;

i. Order Eddie Bauer to pay attorneys' fees, costs, and pre-judgment and post-judgment interest to the extent allowed by law; and

j. Provide all other relief to which Plaintiff and the Class may show themselves justly entitled.

## JURY DEMAND

Plaintiff Susan Clark demands trial by jury on all issues so triable.

Respectfully submitted on April 5, 2024, by:

HATTIS & LUKACS

By: _____
Daniel M. Hattis

By: _____
Paul Karl Lukacs

By: _____
Che Corrington

Daniel M. Hattis, WSBA No. 50428
dan@hattislaw.com
Paul Karl Lukacs, WSBA No. 56093
pkl@hattislaw.com
Che Corrington, WSBA No. 54241
che@hattislaw.com
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Tel: 425.233.8650
Fax: 425.412.7171

*Attorneys for Plaintiff Susan Clark*
*and the Proposed Class*

FIRST AMENDED CLASS ACTION COMPLAINT
FOR DAMAGES AND INJUNCTIVE RELIEF- 34
CASE NO. 2:20-CV-01106-RAJ

## CERTIFICATE OF SERVICE

The undersigned certifies under penalty of perjury under the laws of the State of Washington and the United States of America that on April 5, 2024, the document attached hereto was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in the matter.

Dated: April 5, 2024.

*/s/ Daniel M. Hattis*
Daniel M. Hattis, WSBA No. 50428

**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com