THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SUSAN CLARK,
for Herself and/or On Behalf Of All
Others Similarly Situated,

Plaintiff,

v.

EDDIE BAUER LLC; and
SPARC GROUP LLC,

Defendants.

No. 2:20-cv-1106-RAJ

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO
DISMISS FIRST AMENDED
COMPLAINT**

NOTE ON MOTION CALENDAR:
FRIDAY, MAY 31, 2024

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

RELEVANT FACTS AND PROCEDURAL HISTORY ...................................................... 2

    A.    Ms. Clark's Original Complaint And UTPA Claim ............................................. 2

    B.    This Court's Dismissal Order ............................................................................... 2

    C.    The Appeal Process............................................................................................... 3

           1.    The Oregon Supreme Court Ruled In Favor Of
                 Ms. Clark, Holding That She Has Alleged An
                 Ascertainable Loss Under The UTPA. ...................................................... 4

           2.    The Ninth Circuit Ruled In Favor Of Ms. Clark:
                 She May Seek To Enjoin Eddie Bauer's Ongoing
                 False Discounting Practices........................................................................ 4

    D.    Ms. Clark's First Amended Complaint .................................................................. 5

ARGUMENT ...................................................................................................................... 6

    A.    Ms. Clark's UTPA Claim Is Timely Under Oregon's Discovery Rule. ................ 6

           1.    Ms. Clark Plausibly Alleges That She Could Not Have
                 Reasonably Discovered Eddie Bauer's Unlawful Conduct
                 Earlier Than She Did. ............................................................................... 7

           2.    Ms. Clark Had No Duty To Conduct An Investigation. ......................... 11

           3.    Eddie Bauer Has Failed To Present Evidence Proving
                 That An Investigation Would Have Revealed Its
                 Unlawful Conduct. .................................................................................. 13

           4.    Public Policy Favors Applying The Discovery Rule. ............................. 14

    B.    Ms. Clark May Seek Injunctive Relief Against Eddie Bauer's
        Ongoing False Discount Advertising Practices. .................................................. 15

            1.    Eddie Bauer's "Comparable Value" Price Tags Are
                 Deceptive As A Matter Of Law............................................................... 17

            2.    The Law Of The Case Doctrine Prevents The Court
                 From Reversing Its Ruling That Eddie Bauer's
                 "Comparable Value" Tags Violate The UTPA. ...................................... 19

    C.    Whether Ms. Clark Can Represent Class Members Who Purchased
        Products With A "Comparable Value" Tag Is A Question For Class
         Certification. ....................................................................................................... 21

CONCLUSION .................................................................................................................. 22

1

## <u>TABLE OF AUTHORITIES</u>

2

**CASES**

3

4

*Bodin v. B. & L. Furniture Co.,*
   42 Or. App. 731 (1979) ................................................................. 9

5

6

*Bodunov v. Kutsev,*
   214 Or. App. 356 (2007) ......................................................... 7, 10

7

*Clark v. Eddie Bauer LLC,*
   371 Or. 177 (2023) ..................................................................... 4

8

9

*Cole v. Sunnyside Marketplace, LLC,*
   212 Or. App. 509 (2007) ..................................................... 6, 9, 11

10

11

*De Jaray v. Lattice Semiconductor Corp.,*
   No. 3:19-CV-86-SI,
   2022 WL 4087788 (D. Or. Sept. 6, 2022) ...................................... 9

12

13

*Easterbrook v. LinkedIn Corp.,*
   No. 6:22-CV-01108-MC,
   2023 WL 3022497 (D. Or. Apr. 20, 2023) .................................... 10

14

15

*Fagan v. City of Vineland,*
   22 F.3d 1283 (3d Cir. 1994) ...................................................... 20

16

17

*Frame-Wilson v. Amazon.com, Inc.,*
   664 F. Supp. 3d 1198 (W.D. Wash. 2023) ................................. 2, 21

18

19

*Gaston v. Parsons,*
   318 Or. 247 (1994) .................................................................. 6, 9

20

21

*Guirma v. O'Brien,*
   259 Or. App. 778 (2013) ........................................................... 10

22

23

*Johnson v. Multnomah Cnty. Dep't of Cmty. Just.,*
   344 Or. 111 (2008) ........................................................... 9, 11, 12

24

*Kaseberg v. Davis Wright Tremaine, LLP,*
   351 Or. 270 (2011) .................................................................. 6, 9

25

26

*Keller v. Armstrong World Indus., Inc.,*
   342 Or. 23 (2006) ................................................................... 9, 13

27

28

*Lowry v. Univ. of Oregon Med. Sch.,*
   No. 3:16-CV-01049-YY,
   2018 WL 5780849 (D. Or. Sept. 28, 2018) ..................................... 9

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS FAC - iii
20-CV-1106-RAJ

**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

*MacQuaid v. New York Times Co.,*
    No. 3:22-CV-00955-MO,
    2023 WL 2633359 (D. Or. Mar. 24, 2023) ........................................................ 10

*Melendres v. Arpaio,*
    784 F.3d 1254 (9th Cir. 2015) .............................................................. 2, 21

*Mendoza v. Lithia Motors, Inc.,*
    2017 WL 125018 (D. Or. Jan. 11, 2017) ..................................................... 6, 7, 10

*Morris v. Dental Care Today, P.C.,*
    306 Or. App. 259 (2020) ....................................................................... 10

*Olson v. Grant Cnty.,*
    No. 2:20-CV-01342-SU,
    2021 WL 646055 (D. Or. Jan. 26, 2021) ....................................................... 10

*Rubenstein v. The Gap, Inc.,*
    14 Cal. App. 5th 870 (2017) ................................................................... 13

*Russell v. Ray Klein, Inc.,*
    No. 1:19-CV-00001-MC,
    2021 WL 1895238 (D. Or. May 10, 2021) ...................................................... 10

*T.R. v. Boy Scouts of Am.,*
    344 Or. 282 (2008) .................................................................. 6, 13, 14, 15

*United States v. Alexander,*
    106 F.3d 874 (9th Cir. 1997) ................................................................... 20

*United States v. Phillips,*
    367 F.3d 846 (9th Cir. 2004) ................................................................... 20

**STATUTES**

ORS 646.638 ........................................................................................ 5, 6

ORS 646.883 ................................................................................. 18, 19, 20

**REGULATIONS**

OAR 137-020-0010 ............................................................................ 17, 18, 19

**RULES**

Fed. R. Civ. P. 12 .................................................................................. 13

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS FAC - iv
20-CV-1106-RAJ

**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA  98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

## INTRODUCTION

This Court can and should easily deny Defendants Eddie Bauer LLC and SPARC Group LLC's ("Eddie Bauer") motion to dismiss Plaintiff Susan Clark's First Amended Complaint. (Dkt. 42).[1]

Ms. Clark spent the last two years appealing this Court's previous order dismissing her complaint with prejudice. She obtained two major victories on appeal. First, the Oregon Supreme Court held that Eddie Bauer's alleged false discount advertising harms consumers, thus allowing Ms. Clark to maintain her Oregon Unfair Trade Practices Act ("UTPA") claim. Second, the Ninth Circuit held that Ms. Clark may seek an injunction against Eddie Bauer's ongoing false discount advertising notwithstanding the fact that Eddie Bauer now labels its ticketed prices with the term "Comparable Value." For injunctive relief, Eddie Bauer's method of injuring Ms. Clark is immaterial so long as the injury is the same; and the Ninth Circuit held that Ms. Clark continues to face the same injury from Eddie Bauer's "Comparable Value" pricing scheme as she did before Eddie Bauer added the label.

Only one issue remained in the aftermath of the appeal: The Court previously held that Ms. Clark cannot use the discovery rule to preserve her UTPA claim unless she includes in her complaint "the circumstances associated with her discovery." The Court described this as a "minor technicality" that could be cured through an amended complaint. Ms. Clark obliged the Court and amended her complaint to explain how she discovered Eddie Bauer's false discount advertising.

Eddie Bauer took Ms. Clark's amendment of the complaint as an opportunity to file this motion to dismiss. Eddie Bauer does not dispute that Ms. Clark sufficiently alleged the circumstances associated with her discovery—the only thing the Court requested. Instead, Eddie Bauer argues that Ms. Clark should have known about its false discount advertising—or should have known enough to conduct an investigation—at some point prior to July 16, 2019 (one year before she filed her lawsuit). As discussed below, Eddie Bauer is wrong on both

---

[1] All page citations to the Motion and other papers filed in this action are to the blue ECF PACER page numbers at the top of each page.

**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA  98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1  accounts. But more importantly, these are factual questions for the jury, as this Court said in its

2  prior order.

3      Eddie Bauer also argues that the Court should strike Ms. Clark's requested injunctive

4  relief to the extent it would enjoin Eddie Bauer from engaging in its current allegedly unlawful

5  practices involving its "Comparable Value" prices. But the Ninth Circuit held that Ms. Clark

6  has standing to seek this injunction (and this Court held the same).

7      Finally, Eddie Bauer argues that Ms. Clark has not suffered an injury stemming from its

8  "Comparable Value" label, and thus, she cannot represent a class who purchased products with

9  that label. However, "any issues regarding the relationship between the class representative and

10  the passive class members—such as dissimilarity in injuries suffered—are relevant only to

11  class certification[.]" *Melendres v. Arpaio*, 784 F.3d 1254, 1261 (9th Cir. 2015) (emphasis

12  added). This Court has said the same. *See Frame-Wilson v. Amazon.com, Inc.*, 664 F. Supp. 3d

13  1198, 1207 (W.D. Wash. 2023) (Jones, J.).

14      The Court should deny Eddie Bauer's motion in its entirety.

15  ## RELEVANT FACTS AND PROCEDURAL HISTORY

16  ### A.    Ms. Clark's Original Complaint And UTPA Claim

17      On July 16, 2020, Plaintiff Susan Clark filed her class action complaint in this Court.

18  *See* Complaint (Dkt. 1). In her complaint, Ms. Clark alleged that she was one of the victims of a

19  massive false discount advertising scheme perpetrated by Eddie Bauer at its Eddie Bauer Outlet

20  stores. Compl. ¶¶ 4–5, 46–78.

21      Ms. Clark's complaint alleged a single cause of action for violation of the Oregon

22  Unlawful Trade Practices Act ("UTPA"). Compl. ¶¶ 89–122. Ms. Clark alleged her UTPA

23  claim as a proposed representative of a class of consumers who purchased from an Eddie Bauer

24  Outlet store in Oregon one or more products which were advertised with a reference price or

25  discount. Compl. ¶ 79.

26  ### B.    This Court's Dismissal Order

27      On August 25, 2020, Eddie Bauer filed a Motion To Dismiss Plaintiff's Complaint

28  (Dkt. 16). On April 1, 2021, this Court granted the motion to dismiss. *See* Order (Dkt. 27).

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS FAC - 2
20-CV-1106-RAJ

**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA  98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

The Court rejected many of Eddie Bauer's arguments, two of which are particularly relevant to this Motion. First, the Court held that Ms. Clark has standing to bring her UTPA claim. Order 3–5. And second, the Court held that Ms. Clark has standing to seek injunctive relief against Eddie Bauer's ongoing unlawful false discounting practices, notwithstanding the fact that Eddie Bauer now labels its ticketed prices with the term "Comparable Value." Order 5–6.

In so ruling, the Court specifically found that Eddie Bauer's "Comparable Value" tags violate the UTPA. "[A]ccording to the UTPA, Eddie Bauer must provide the *origin* of any such reference price," and "[a]n opaque reference to a 'comparable value' does not meet this requirement." Order 5. "Nor does a reference on the tag to a comparable value, without support for its basis, reduce the injury Ms. Clark would suffer. An inflated reference price, regardless of the source, may still cause a consumer such as Ms. Clark confusion in that she may still believe she is getting a deal when, in fact, she is not." Order 5–6.

The Court ultimately granted the motion to dismiss with prejudice, finding that Ms. Clark could not plead an ascertainable loss, a necessary element of her UTPA claim. Order 9–11. The Court also found that Ms. Clark could not seek injunctive relief for her future harms because she had an adequate remedy at law in the form of monetary damages. Order 7.

Also relevant to this Motion, the Court held that Ms. Clark cannot use the discovery rule to preserve her UTPA claim unless she includes in her complaint "the circumstances associated with her discovery." Order 8. The Court described this as a "minor technicality" that could be cured through an amended complaint. *Id*. Once this requirement is met, however, whether the discovery rule applies is "normally a question for the jury." *Id*.

### C.    The Appeal Process

Ms. Clark timely appealed the Court's Order. Dkt. 29. On April 14, 2022, the Ninth Circuit certified the "ascertainable loss" question to the Oregon Supreme Court. Dkt. 31.

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS FAC - 3
20-CV-1106-RAJ

**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA  98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1        **1.      The Oregon Supreme Court Ruled In Favor Of Ms. Clark, Holding That She Has Alleged An Ascertainable Loss Under The UTPA.**

On June 29, 2023, the Oregon Supreme Court issued its Opinion, in which it held that a consumer suffers an "ascertainable loss" under the UTPA as a result of the "consumer's decision to purchase a product in reliance upon the retailer's misrepresentation as to price history or comparative prices." *Clark v. Eddie Bauer LLC*, 371 Or. 177, 199 (2023). Specifically, the court recognized Ms. Clark's "purchase price theory," which holds that, "when a person acts in response to the deception by spending money that the person would not otherwise have spent, the person has been injured to the extent of the purchase price as a result of that deception." *Id.* at 198–99. The court expressed no opinion on Ms. Clark's other two injury theories. *See id.* at 187.

**2.      The Ninth Circuit Ruled In Favor Of Ms. Clark: She May Seek To Enjoin Eddie Bauer's Ongoing False Discounting Practices.**

On January 17, 2024, the Ninth Circuit issued its Memorandum, in which it affirmed in part, and reversed in part, this Court's Order. Dkt. 33.

<u>First</u>, the Ninth Circuit reversed this Court's dismissal of Ms. Clark's UTPA claim in light of the Oregon Supreme Court's Opinion. Mem. 3.

<u>Second</u>, the Ninth Circuit affirmed this Court's holding that Ms. Clark has standing to seek injunctive relief against Eddie Bauer's ongoing false discounting practices, even though Eddie Bauer now labels its ticketed prices with the term "Comparable Value." Mem. 4–7. "Eddie Bauer's adoption of the new pricing policy does not change our analysis of Clark's standing." Mem. 6. A court looks at "the injury the plaintiff has suffered and may suffer in the future, not the method by which that injury is inflicted." Mem. 6. "Eddie Bauer's new policy only changes a single component of what Clark alleges to be a broader false advertising scheme consisting of misleading signage, tags, and receipts. As a result, Clark will continue to face the same prospective injury of being unable to rely on the validity of the information advertised by Eddie Bauer despite a desire to do so." Mem. 7 (cleaned up).

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS FAC - 4
20-CV-1106-RAJ

**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Third, the Ninth Circuit reversed this Court's dismissal of Ms. Clark's injunctive relief claim, holding that monetary damages for past harms is not an adequate legal remedy for her future harm. Mem. 7–8. "The injunctive relief requested in Clark's complaint was to . . . prevent Eddie Bauer from engaging in misleading pricing schemes in the *future*." Mem. 7.

Fourth, the Ninth Circuit reversed this Court's denial of leave to amend so that Ms. Clark could explain the circumstances associated with her discovery of Eddie Bauer's unlawful practices. Mem. 8.

### D.    Ms. Clark's First Amended Complaint

On April 5, 2024, Ms. Clark filed her first amended complaint to cure the "minor technicality" of explaining the circumstances associated with her discovery. *See* First Amended Complaint ("FAC") (Dkt. 42). She also took this opportunity to provide greater detail on why she could not have reasonably discovered Eddie Bauer's false discount advertising sooner.

In her First Amended Complaint, Ms. Clark alleges that she first discovered Eddie Bauer's false discount advertising practices on March 13, 2020, when she saw a lawsuit investigation advertisement on TopClassActions.com that discussed Eddie Bauer's false advertising scheme. FAC ¶ 86. Prior to reading the advertisement, Ms. Clark did not know or suspect that Eddie Bauer was engaging in a false discount advertising scheme or that she may have been a victim of the scheme. *Id*. Eddie Bauer had given her no reason to be suspicious. FAC ¶ 139. Only after reading the TopClassActions.com advertisement did Ms. Clark have a reason to suspect that she might have been harmed by Eddie Bauer's scheme of advertising false discounts. FAC ¶ 87. As soon as she learned this, Ms. Clark diligently investigated her potential claim by submitting a form on the lawsuit investigation webpage that same day to learn if she qualified to be part of the lawsuit. *Id*. She filed her complaint a few months later, on July 16, 2020, well "within one year after [her] discovery of the unlawful method, act or practice." ORS 646.638(6).

On May 3, 2024, Eddie Bauer took Ms. Clark's amendment of the complaint as an opportunity to file this Motion to Dismiss Plaintiff's First Amended Complaint ("Motion") (Dkt. 46).

# ARGUMENT

**A.      Ms. Clark's UTPA Claim Is Timely Under Oregon's Discovery Rule.**

Actions brought under the UTPA "must be commenced within one year after the discovery of the unlawful method, act or practice." ORS 646.638(6). "[Oregon's] discovery rule applies an objective standard—how a reasonable person of ordinary prudence would have acted in the same or a similar situation." *Kaseberg v. Davis Wright Tremaine, LLP*, 351 Or. 270, 278 (2011). "The statute of limitations begins to run when the plaintiff knows or, in the exercise of reasonable care, should have known facts that would make a reasonable person aware of a <u>substantial possibility</u> that each of the elements of a claim exists." *Id.* (emphasis added). "<u>Mere suspicion</u>" is insufficient to commence the period of limitations. *Id.*

Oregon's discovery rule also contains a duty to investigate when a reasonable person would have done so. *Gaston v. Parsons*, 318 Or. 247, 256 (1994). "The duty arises <u>only</u> when there are facts that would prompt a reasonable person to make the inquiry." *Cole v. Sunnyside Marketplace, LLC*, 212 Or. App. 509, 521 (2007) (emphasis added). Even when the duty arises, "the statute of limitations <u>only</u> begins to run if the investigation would have disclosed the necessary facts." *T.R. v. Boy Scouts of Am.*, 344 Or. 282, 292 (2008) (emphasis added). And, significantly, "[t]he party who asserts the statute of limitations defense must prove that an investigation would have disclosed those facts." *Id.* at 294. Proof must be substantiated by evidence. *Id.* at 299.

"Application of the discovery rule presents a factual question for determination by a jury unless the only conclusion that a jury could reach is that the plaintiff knew or should have known the critical facts at a specified time and did not file suit within the requisite time thereafter." *Kaseberg*, 351 Or. at 278.

Because this is a motion to dismiss, Ms. Clark must be given "the deference due under Rule 12(b)(6)," which includes accepting all allegations as true and construing all inferences in her favor. *See Mendoza v. Lithia Motors, Inc.*, 2017 WL 125018, at *3 (D. Or. Jan. 11, 2017) (holding that the discovery rule applied where the plaintiffs plausibly alleged that they could not have reasonably discovered defendants' UTPA violation because the necessary information

was concealed by defendants). Dismissal is inappropriate unless the court can decide the issue

on the "face of the complaint" alone. *Bodunov v. Kutsev*, 214 Or. App. 356, 359 (2007).[2]

Eddie Bauer argues that Ms. Clark should have known about its false discount

advertising—or should have known enough to conduct an investigation—at some point prior to

July 16, 2019 (one year before she filed her lawsuit). Eddie Bauer is wrong on both accounts,

as discussed below.

### 1. Ms. Clark Plausibly Alleges That She Could Not Have Reasonably Discovered Eddie Bauer's Unlawful Conduct Earlier Than She Did.

Ms. Clark alleges that she first discovered Eddie Bauer's false discount advertising

practices on March 13, 2020, when she saw a lawsuit investigation advertisement on

TopClassActions.com. FAC ¶ 86. Prior to this, Ms. Clark did not know or suspect that Eddie

Bauer was engaging in a false discount advertising scheme or that she may have been a victim

of the scheme. *Id.*

Ms. Clark further alleges that she "could not have, with the exercise of reasonable

diligence, discovered Eddie Bauer's false advertising scheme because, <u>by design</u>, its very

nature is hidden and impossible for an ordinary consumer to discover." FAC ¶ 142. The two

times Ms. Clark visited Eddie Bauer's outlet stores, there was no way for her to reasonably

know that the ticketed prices printed on the product tags were fictitious and inflated and that the

advertised discounts were false. *Id.* For example, Ms. Clark could not have reasonably known

that the Fleece Zip she bought had never been offered for sale at its purported regular price of

$39.99—the ticketed price printed on the jacket's product tag. *Id.* This would have required her

---

[2]    Eddie Bauer asserts that Rule 9(b) elevates the discovery rule standard. Mot. 15. Eddie Bauer is wrong. Rule 9(b) only requires a plaintiff to "state with particularity the circumstances constituting fraud." The Court already held that Ms. Clark's allegations satisfy Rule 9(b) by "includ[ing] the details necessary to notify Eddie Bauer of the nature of Ms. Clark's fraud allegations.… 'No further specificity is required to enable Defendants to make a meaningful denial.'" Order 6. While it is true that a plaintiff must plead that she reasonably could not have known about the defendant's unlawful conduct, these allegations must only be facially plausible to survive a motion to dismiss. *See Mendoza*, 2017 WL 125018, at *3. But even if Rule 9(b) applied to the discovery rule (which it does not), Ms. Clark has stated with particularity how she discovered Eddie Bauer's unlawful practices and why she could not have reasonably discovered those practices sooner. *See* FAC ¶¶ 86–87, 139–43.

to know the daily historical selling prices for the products, which is not something Ms. Clark—or any consumer—could have reasonably, or even could have possibly, known. *Id.*

In its Motion, Eddie Bauer concocts a strange new theory for why the discovery rule still does not apply. Eddie Bauer says that Ms. Clark should have discovered Eddie Bauer's false discount advertising when she <u>wore</u> the items that she purchased, because, according to Eddie Bauer, consumers "determine the value of clothing simply by wearing it." Mot. 18. In Eddie Bauer's imaginary world, Ms. Clark should have determined the value of the items that she purchased when she wore them and then compared that "worn" value to the items' ticketed prices to discover that those ticketed prices could not possibly be the true regular selling prices.

Of course, in the real world, the only way for a person to know that Eddie Bauer's advertised discounts were false is for the person to know Eddie Bauer's true historical selling prices for the products he or she purchased. Remarkably, Eddie Bauer <u>agrees</u> that this historical selling price information is necessary, as this is the exact information it argues Ms. Clark would have learned through an investigation to discover its unlawful conduct. Mot. 19.

Eddie Bauer's "theory" is balderdash. A reasonable person cannot divine an item's regular selling price just by wearing it. Whatever Eddie Bauer thinks a consumer learns from wearing an item, it is not the item's regular selling price.[3]

For Eddie Bauer to prevail, this Court would need to hold as a matter of law that when a reasonable consumer wears an item, she learns facts (perhaps through telepathy or witchcraft) that would make her aware of a substantial possibility that the item's ticketed price was not in fact the true regular historical selling price.

---

[3]    Eddie Bauer focuses on the word "value" because Ms. Clark uses the word throughout her First Amended Complaint. It is unclear what Eddie Bauer thinks "value" means, but Ms. Clark uses the word to mean the item's regular selling price. For example, "Ms. Clark reasonably believed that the <u>regular and usual price</u> for the Fleece Zip <u>was the $39.99 price printed on the tag</u> (and from which the "50% off" discount was being calculated). Ms. Clark reasonably believed that the Fleece Zip was <u>thereby worth and had a value of $39.99</u>." FAC ¶ 63 (emphasis added); *see also* FAC ¶¶ 64, 67, 73–74, 77. Decades of consumer behavior research also shows that consumers understand the value of an item to be its regular selling price. Ms. Clark cites a fraction of this research in her complaint. *See* FAC ¶ 30 & n.5. Thus, to the extent that Eddie Bauer is using the word "value" to mean something other than the item's regular selling price, it is incorrect and irrelevant.

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS FAC - 8
20-CV-1106-RAJ

Countless courts have refused to decide an issue such as this as a matter of law, even when presented with far more logical and reasonable arguments. Even when this issue is raised on summary judgment after evidence has been presented, this question still goes to the jury in all but the clearest of cases. *See*, *e.g.*, *Kaseberg*, 351 Or. at 282–84 (holding that this issue raised questions of fact that precluded summary judgment); *T.R.*, 344 Or. at 300 (same); *Johnson v. Multnomah Cnty. Dep't of Cmty. Just.*, 344 Or. 111, 123 (2008) (same); *Keller v. Armstrong World Indus., Inc.*, 342 Or. 23, 38 (2006) (same); *Gaston*, 318 Or. at 258 (same); *Cole v. Sunnyside Marketplace, LLC*, 212 Or. App. 509, 520–21 (2007) (same); *De Jaray v. Lattice Semiconductor Corp.*, No. 3:19-CV-86-SI, 2022 WL 4087788, at *5 (D. Or. Sept. 6, 2022) (same); *Lowry v. Univ. of Oregon Med. Sch.*, No. 3:16-CV-01049-YY, 2018 WL 5780849, at *6 (D. Or. Sept. 28, 2018) (same).

*Bodin v. B. & L. Furniture Co.*, 42 Or. App. 731 (1979) is instructive. In *Bodin*, the plaintiff believed he was buying new mattresses and boxsprings, when in reality, the defendant delivered second-hand ones. *Id.* at 733. The plaintiff had "[no] reason to think that the mattresses and boxsprings were second-hand" based on their appearance. *Id.* While all of the mattresses and boxsprings had red tags that stated, "Second-hand article," the plaintiff did not notice these red tags until over a year after his purchase. *Id.* He also had no idea that they were second-hand despite using them for a year. The court of appeals held that whether the plaintiff should have discovered that the mattresses and boxsprings were second-hand was a question for the jury. *Id.* at 735. A jury "could have found that plaintiff had absolutely no reason to believe that the mattresses and boxsprings were used," and that "there was no reason to read the tags which were on the mattresses and boxsprings." *Id.*

The facts here are even stronger for Ms. Clark than in *Bodin*. Here, there was no red tag on each product like in *Bodin* (e.g., no disclaimers indicated that in fact Eddie Bauer's discounts were not real). To the contrary, the First Amended Complaint alleges that Eddie Bauer's advertising, store signage, and even its printed product tags are all part of Eddie Bauer's clever scheme to trick its customers into believing the ticketed price is Eddie Bauer's usual and regular price and that its advertised discounts are real. FAC ¶¶ 4, 6, 26–29, 53. A jury

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS FAC - 9
20-CV-1106-RAJ

HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA  98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

would almost certainly find that Ms. Clark had absolutely no reason to believe that the clothes she bought had never been sold at their ticketed prices or that Eddie Bauer was engaging in false discount advertising.

Courts are even more reluctant to decide this issue on a motion to dismiss because evidence has not been presented and the court must accept all allegations as true and construe all inferences in the plaintiff's favor. *See, e.g.*, *Mendoza v*, 2017 WL 125018, at *2–*3 (holding that plaintiffs plausibly alleged that they could not have reasonably discovered defendants' UTPA violations because the necessary information was concealed by defendants); *Bodunov*, 214 Or. App. at 359 (denying motion to dismiss because the "face of the complaint" did not demonstrate that the plaintiff knew or should have known about the defendant's unlawful conduct); *Guirma v. O'Brien*, 259 Or. App. 778, 787–88 (2013) (denying motion to dismiss); *Russell v. Ray Klein, Inc.*, No. 1:19-CV-00001-MC, 2021 WL 1895238, at *2–*3 (D. Or. May 10, 2021) (same); *Olson v. Grant Cnty.*, No. 2:20-CV-01342-SU, 2021 WL 646055, at *4 (D. Or. Jan. 26, 2021) (same).

The few cases Eddie Bauer cites where the court decided this issue only illustrate how clear the evidence must be to decide this issue as a matter of law. For example, in *Morris v. Dental Care Today, P.C.*, 306 Or. App. 259, 262 (2020), the court held that the plaintiff should have known of the defendants' unlawful conduct as of September 2016 because the plaintiff said so in her declaration. In both *MacQuaid v. New York Times Co.*, No. 3:22-CV-00955-MO, 2023 WL 2633359 (D. Or. Mar. 24, 2023) and *Easterbrook v. LinkedIn Corp.*, No. 6:22-CV-01108-MC, 2023 WL 3022497 (D. Or. Apr. 20, 2023), the plaintiff alleged that the defendant automatically renewed her service without obtaining affirmative consent in violation of Oregon's automatic renewal law. In *MacQuaid*, the court held that the defendant's checkout page, which contained a section entitled "AUTOMATIC RENEWAL TERMS" was sufficient to alert the plaintiff that she might be subject to an automatic renewal without her affirmative consent. 2023 WL 2633359, at *1. In *Easterbrook*, the court reached the same conclusion based on the plaintiff's confirmation email, which stated that her service would be automatically renewed each month. 2023 WL 3022497, at *1.

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS FAC - 10
20-CV-1106-RAJ

To the contrary, in this case Ms. Clark does <u>not</u> (and could not) admit to knowing about the unlawful conduct outside of the limitations period and did <u>not</u> (and could not) put screenshots in the complaint showing that she was given explicit notice of the unlawful conduct. Absent such clear, indisputable evidence, dismissal is inappropriate.

### 2.    Ms. Clark Had No Duty To Conduct An Investigation.

Eddie Bauer argues that, at minimum, Ms. Clark knew enough to trigger a duty to investigate.[4] "Whether a plaintiff is subject to a duty to inquire about facts that might trigger a statute of limitations … is itself a question of fact. The duty arises only when there are facts that would prompt a reasonable person to make the inquiry." *Cole v. Sunnyside Marketplace, LLC*, 212 Or. App. 509, 521 (2007) (citations omitted).

Eddie Bauer argues that there are two facts that Ms. Clark should have known that would have prompted a reasonable person to conduct an investigation into whether Eddie Bauer was engaging in false discount advertising.

<u>First</u>, Eddie Bauer argues that <u>wearing</u> the items should have provided enough information to prompt an investigation. Mot. 18. As explained above, wearing an item would not lead a reasonable person to think that the advertised discount for that item was false. Absent <u>actual facts</u> suggesting something of this nature, a reasonable person would not be prompted to investigate whether Eddie Bauer was engaging in false discount advertising. Regardless, this is a question of fact for the jury. *Cole*, 212 Or. App. at 521.

<u>Second</u>, Eddie Bauer—incredibly—argues that Ms. Clark should have conducted an investigation because "the media has extensively covered outlet retailers' general practice of routinely offering outlet-exclusive items at a discount." Mot. 18 n.5.  In a remarkable act of self-immolation, Eddie Bauer essentially argues that everyone knows (because of a couple of news articles about the industry) that Eddie Bauer always lies about its discounts, and thus

---

[4]    Eddie Bauer interchangeably says that Ms. Clark knew enough to put her on "inquiry notice." But the Oregon Supreme Court "specifically disapprove[s] … of that term." *Johnson*, 344 Or. at 119 n.3 ("'Inquiry notice' is a confusing and imprecise label. 'Notice' may cause an 'inquiry' based on it, but the inquiry is not one made on 'inquiry notice.'").

**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA  98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

every Eddie Bauer customer should have been prompted to self-conduct an investigation to confirm their suspicion that Eddie Bauer was indeed lying about its discounts.

As an initial matter, the online articles that Eddie Bauer cites are irrelevant because none mention <u>Eddie Bauer</u>, let alone say that Eddie Bauer is engaging in false discount advertising. Further, only one article suggests that some outlet retailers might be engaging in false discount advertising, but does not specify which retailers. The rest of the articles are on a different topic, namely, how some outlet stores only offer outlet-exclusive items rather than items that were previously sold at the mainline store. But this says nothing about false discount advertising. (Two of the articles are also irrelevant for other reasons—one is about outlet stores in England and one is from October 2023—three years after the complaint was filed.)

But even if these articles were relevant (they obviously are not), Ms. Clark does not allege ever reading them. For that matter, Ms. Clark does not allege ever viewing any media coverage of Eddie Bauer engaging in false discount advertising. The Oregon Supreme Court has <u>soundly rejected</u> the argument that, "for purposes of the discovery rule, an objectively reasonable person should be assumed to be aware of readily available media publications relevant to [her] claim." *Johnson v. Multnomah Cnty. Dep't of Cmty. Just.*, 344 Or. 111, 121 (2008). "The fact that news about some event was *available* at a particular time does not, by itself, resolve whether a reasonable person would have read or heard that news, much less what a reasonable inquiry based on that news would have uncovered." *Id.* at 122. "We are not prepared to say that a juror would be required to conclude, from the mere fact of that coverage, that an objectively reasonable person would have or should have known sufficient facts to trigger the [statute of limitations]." *Id.*

The court reached this conclusion notwithstanding the fact that the defendant submitted three news articles that directly implicated the defendant's role in the plaintiff's injury, and the plaintiff testified that she was aware of the news coverage, but that she had not read any of it. *Id.* at 115–17. Here, Eddie Bauer cites <u>zero</u> articles suggesting that Eddie Bauer might be engaging in false discount advertising. Obviously, if the evidence in *Johnson* was insufficient for a court to decide this issue, Eddie Bauer's so-called evidence is likewise insufficient.

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS FAC - 12
20-CV-1106-RAJ

### 3. Eddie Bauer Has Failed To Present Evidence Proving That An Investigation Would Have Revealed Its Unlawful Conduct.

Even if Ms. Clark knew enough to prompt a reasonable person to investigate, "the statute of limitations only begins to run if the investigation would have disclosed the necessary facts." *T.R. v. Boy Scouts of Am.*, 344 Or. 282, 292 (2008). And, "[t]he party who asserts the statute of limitations defense must prove that an investigation would have disclosed those facts." *Id.* at 294. Proof must be substantiated by <u>evidence</u>. *See id.* at 299 (finding that the defendant "ha[d] not pointed to evidence that, had plaintiff inquired, its officials would have disclosed that they knew that they should have had policies and procedures in place to protect plaintiff but did not").

Eddie Bauer makes the preposterous argument that Ms. Clark could have discovered its false discount advertising by asking an outlet store employee for the price histories of the items she purchased. Mot. 19. But Eddie Bauer presents no evidence proving that Eddie Bauer's employees at its Oregon outlet stores (1) would have known—or even had access to—the full price histories of the items being sold and (2) would have disclosed this information to Ms. Clark upon request. This utter lack of evidence dooms Eddie Bauer's argument. "[I]f no evidence exists on an issue of fact that is material to defendant's statute of limitations argument, that omission defeats that argument." *Keller v. Armstrong World Indus., Inc.*, 342 Or. 23, 38 n.12 (2006).

Eddie Bauer, and also its attorneys, know that Eddie Bauer has no evidence to support this theory. (Anyone who has worked in retail, or who has defended retailers in false discount advertising cases, knows that retail workers do not have this kind of information.) But even if such evidence existed, Eddie Bauer cannot produce it without converting the motion to dismiss into a motion for summary judgment. Fed. R. Civ. P. 12(d).[5]

---

[5] Eddie Bauer cites a California decision, *Rubenstein v. The Gap, Inc.*, 14 Cal. App. 5th 870, 877 (2017), for the proposition that a consumer could ask a store employee for a product's price history. *Rubenstein* is inapposite for several reasons. First, the information in *Rubenstein* was whether the outlet items had been previously sold in the defendant's mainline retail stores. *Id.* While a store employee might know this information, that is not the issue here. Nothing in *Rubenstein* suggests that, as a matter of law, retail employees know the full price history of the

Eddie Bauer suggests no other way in which Ms. Clark could have reasonably uncovered its unlawful pricing practices. And Ms. Clark alleges that she "could not have, with the exercise of reasonable diligence, discovered Eddie Bauer's false advertising scheme because, by design, its very nature is hidden and impossible for an ordinary consumer to discover." FAC ¶ 142. She further alleges that "Eddie Bauer's scheme was only discovered by Plaintiff's counsel because her counsel conducted an extensive investigation that was beyond the means of an ordinary consumer." FAC ¶ 144. This investigation included using an expensive proprietary data harvesting system to collect the daily price histories for tens of thousands of products on Eddie Bauer's websites and then performing big-data analysis on the resulting pricing data. FAC ¶ 143.

Ms. Clark "only is required to conduct an investigation that a reasonable person in [her] circumstances would conduct," and she is not required to employ experts to uncover facts that a reasonable person could not uncover. *T.R.*, 344 Or. at 293. No reasonable person would—or could—conduct this type of investigation in order to discover Eddie Bauer's unlawful conduct.

### 4. Public Policy Favors Applying The Discovery Rule.

As discussed above, Ms. Clark did not know, and could not have reasonably known, that Eddie Bauer was engaging in false discount advertising or that she might be a victim of Eddie Bauer's unlawful conduct until she saw the lawsuit investigation advertisement on March 13, 2020. The Oregon Supreme Court recognized the discovery rule specifically to protect plaintiffs in Ms. Clark's position: "To say that a cause of action accrues to a person when she may maintain an action thereon and, at the same time, that it accrues before she has or can reasonably be expected to have knowledge of any wrong inflicted upon her is patently inconsistent and unrealistic. She cannot maintain an action before she knows she has one. To say to one who has been wronged, 'You had a remedy, but before the wrong was ascertainable

products being sold or that they would disclose this information upon request—especially if it meant admitting to false advertising. Second, *Rubenstein* was decided under California law; Oregon law requires the defendant to produce evidence proving that an investigation would have revealed the defendant's unlawful conduct. *T.R.*, 344 Or. at 294. A court cannot decide this issue in the absence of such evidence.

to you, the law stripped you of your remedy,' <u>makes a mockery of the law</u>." *T.R.*, 344 Or. at 291 (quoting *Berry v. Branner*, 245 Or. 307, 312 (1966)) (emphasis added).

Unsurprisingly, Eddie Bauer asks this Court to make a mockery of the law. Eddie Bauer argues that the statute of limitations should run from the date that Ms. Clark's <u>attorneys</u> became aware of Eddie Bauer's false discount advertising. Mot. 20. In other words, Eddie Bauer attempts to attach the discovery rule to the plaintiff's counsel's knowledge of the unlawful conduct, rather than the plaintiff's knowledge. This is not how the discovery rule works, and Eddie Bauer does not—and cannot—cite any authority for this novel theory. An attorney's knowledge of a business's unlawful conduct cannot jeopardize the claims of every unwitting consumer.

**B.      Ms. Clark May Seek Injunctive Relief Against Eddie Bauer's Ongoing False Discount Advertising Practices.**

Eddie Bauer asks this Court to strike Ms. Clark's requested injunctive relief to the extent it would enjoin Eddie Bauer from engaging in its ongoing unlawful practices involving its "Comparable Value" prices. Mot. 8. This issue has <u>already been decided</u> by both this Court and the Ninth Circuit.

This Court previously held that Ms. Clark has standing to seek injunctive relief against Eddie Bauer's "Comparable Value" advertising. Order 5–6 (Dkt. 27). In doing so, the Court rejected Eddie Bauer's argument that "Ms. Clark lacks standing for injunctive relief because it has since changed the reference pricing scheme it utilizes, now referencing a 'comparable value' on its sales tags for garments, rather than a reference price based on the garment's allegedly fictitious full retail price." Order 5. The Court explained that Eddie Bauer's "Comparable Value" tags still violate the UTPA, which requires Eddie Bauer to "provide the *origin* of any such reference price." Order 5. "An opaque reference to a 'comparable value' does not meet this requirement. Nor does a reference on the tag to a comparable value, without support for its basis, reduce the injury Ms. Clark would suffer. An inflated reference price, regardless of the source, may still cause a consumer such as Ms. Clark confusion in that she may still believe she is getting a deal when, in fact, she is not." Order 5–6.

Eddie Bauer attempted to appeal this Court's ruling—unsuccessfully. The Ninth Circuit acknowledged that "the injunctive relief requested in Clark's complaint was to . . . prevent Eddie Bauer from engaging in misleading pricing schemes in the *future*." Mem. 7 (Dkt. 33). The Ninth Circuit affirmed this Court's holding that Ms. Clark has standing to seek such injunctive relief, and agreed with this Court that "Eddie Bauer's adoption of the new pricing policy does not change our analysis of Clark's standing." Mem. 4–7. A court looks at "the injury the plaintiff has suffered and may suffer in the future, not the method by which that injury is inflicted." Mem. 6. Eddie Bauer's "Comparable Value" prices still violate the UTPA, and the injury Ms. Clark faces has not changed since Eddie Bauer switched from one unlawful practice to the other. "Clark will continue to face the same prospective injury of being unable to rely on the validity of the information advertised by Eddie Bauer despite a desire to do so." Mem. 7 (cleaned up). Eddie Bauer's request to strike Ms. Clark's requested injunctive relief is therefore mooted by the Ninth Circuit's ruling.

Eddie Bauer attempts to circumvent this clear ruling by reframing the issue as a failure to state a UTPA claim with regard to its "Comparable Value" label. But Ms. Clark is not bringing a new UTPA claim. She is seeking injunctive relief under her original—and only— UTPA claim to remedy the "same prospective injury" that she continues to face even after Eddie Bauer's change in unlawful practices. The Ninth Circuit has now ruled that she has standing to do so. Moreover, for injunctive relief, Eddie Bauer's <u>method</u> of injuring Ms. Clark is immaterial so long as the <u>injury</u> is the same—which it is. Mem. 6–7. Indeed, as this Court explained, an opaque reference on the tag to a comparable value, without support for its basis, does not reduce the injury Ms. Clark would suffer. Order 5. Without identifying the comparable item, a consumer has no way of knowing if the price comparison is legitimate or a falsely inflated reference price. Thus, Ms. Clark can seek to enjoin Eddie Bauer's pricing practices to the extent they are unlawful and cause her the same <u>prospective</u> injury.

Because Ms. Clark is not bringing a new UTPA claim based on Eddie Bauer's "Comparable Value" pricing practice, Eddie Bauer's arguments on this point are irrelevant. That said, Ms. Clark will address two of Eddie Bauer's contentions: First, that its use of

"Comparable Value" is permissible and not deceptive; and second, that the Court should reverse its prior ruling that Eddie Bauer's "Comparable Value" price tags violate the UTPA.

### 1. Eddie Bauer's "Comparable Value" Price Tags Are Deceptive As A Matter Of Law.

Eddie Bauer does not attempt to argue that its practice of labeling its ticketed prices with "Comparable Value" is lawful under the UTPA. Instead, Eddie Bauer argues that its use of "Comparable Value" is permitted by the Federal Trade Commission ("FTC") pricing guidelines and is not deceptive under the "reasonable consumer" test. These arguments are meritless.

First, the FTC guidelines are not Oregon law. Oregon has its own price comparison rule, OAR 137-020-0010, which is more comprehensive than the FTC guidelines.[6] Second, the reasonable consumer test does not apply because OAR 137-020-0010 states what types of price comparisons are deceptive <u>as a matter of law</u>.[7] As discussed below, Eddie Bauer's "Comparable Value" prices violate OAR 137-020-0010, which make them *per se* deceptive and unlawful under the UTPA.

OAR 137-020-0010(2) states the purpose of the rule: "At present, it is unlawful under ORS 646.608(1)(j) to make 'false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions.' This rule is intended to define types of price comparisons which are in violation of that section, by establishing permissible types of reference price advertising."

---

[6]    In fact, the Oregon Attorney General rejected the FTC guidelines when adopting Oregon's price comparison rule, OAR 137-020-0010, stating: "[I]n my opinion <u>the guidelines are not satisfactory</u> for either the consumer public, or the business community, <u>because they are too general and contain too many vague terms</u>." Order Adopting Rules 20-010, 20-015, and 20-030 Pursuant to the Unlawful Trade Practices Act, 4 (July 20, 1976) (emphasis added) (attached as **Exhibit A** to the Declaration of Che Corrington). Instead, OAR 137-020-0010 was adopted "to provide a <u>precise standard</u> interpreting ... ORS 646.608 (1)(j), prohibiting misrepresentations regarding the reasons for, existence of, or amounts of price reductions." *Id.* at 2 (emphasis added).

[7]    Even if the reasonable consumer test applied, the Court already held that an opaque reference on the tag to a comparable value, without support for its basis, <u>may mislead consumers</u> into believing they are getting a deal when, in fact, they are not. *See* Order 5–6. The reason for the UTPA having these requirements is to prevent consumers from being misled by reference prices.

The rule establishes seven permissible types of reference price advertising. OAR 137-020-0010(6)(a)-(g). A reference price is *per se* deceptive <u>unless</u> it comes within one of the seven permissible types. OAR 137-020-0010(6) (stating that a person "engages in conduct which [is] unfair or deceptive" when it advertises a reference price "unless such reference price comes within any one of the following exceptions").

Eddie Bauer says that "Comparable Value" refers to "the market price of a similar item." Mot. 22. This type of reference price is deceptive unless "[t]he reference price is stated or readily ascertainable, and is a price at which an identified or identifiable competitor is or has in the recent regular course of its business offered to make good faith sales of the same or similar goods." OAR 137-020-0010(6)(c). And, "compliance is established based on facts provable by the seller," i.e., <u>Eddie Bauer</u>. ORS 646.883(2). Further, Eddie Bauer is required to provide the origin of its reference prices in its advertisements. ORS 646.883(1).

Taken together, Eddie Bauer's "Comparable Value" prices are *per se* deceptive and unlawful unless Eddie Bauer identifies in the advertisement what product Eddie Bauer is using as a comparison and which competitor offered that product at that price in the recent regular course of its business. Eddie Bauer has done <u>none</u> of this.

Eddie Bauer also <u>bears the burden</u> of presenting factual evidence proving that the (phantom) competitor in fact offered to make good-faith sales of that comparable product at said price in the recent regular course of its business. And, of course, this must be shown for the entire time that Eddie Bauer offers the product for sale with that advertised "Comparable Value" price. Eddie Bauer fails to do so.

Eddie Bauer does not—and cannot—present such evidence because, as Ms. Clark alleges, Eddie Bauer's "Comparable Value" prices are phony. FAC ¶¶ 7, 42–44. Eddie Bauer did <u>not</u> find products sold by competitors and utilize those selling prices as the "Comparable Value" prices for its own products. Indeed, when Eddie Bauer began using the label "Comparable Value," the ticketed prices for all of its products remained <u>exactly the same</u> as they were before. FAC ¶ 7. In other words, Eddie Bauer just took its existing phony ticketed prices and added the label "Comparable Value."

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS FAC - 18
20-CV-1106-RAJ

**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA  98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Eddie Bauer attempts to shift the burden onto Ms. Clark by arguing that she needed to allege facts suggesting that "other retailers did not offer similar merchandise for Eddie Bauer's listed 'Comparable Value' prices." Mot. 24. Eddie Bauer has it <u>backwards</u>. Under Oregon law, it is <u>Eddie Bauer's</u> burden (not Ms. Clark's) to identify (including in its advertisements) what specific similar item is being sold by what specific competitor at the "Comparable Value" price. *See* OAR 137-020-0010(6)(c); ORS 646.883(1).[8]

Without identifying the comparable item or the competitor, a consumer has no way of knowing if the price comparison is legitimate or a falsely inflated reference price. Order 6. And, if Eddie Bauer, as alleged, is not choosing similar items to base its "Comparable Value" prices on, then its reference prices are just as false and deceptive as before it added this bogus label.

> ### 2. The Law Of The Case Doctrine Prevents The Court From Reversing Its Ruling That Eddie Bauer's "Comparable Value" Tags Violate The UTPA.

This Court previously held that Eddie Bauer's "Comparable Value" tags violate the UTPA, which requires Eddie Bauer to "provide the *origin* of its reference prices." Order 5; *see also* ORS 646.883(1) ("It shall be unlawful for a seller to include a price comparison in an advertisement unless . . . [t]he seller clearly and conspicuously identifies in the advertisement the origin of the price that the seller is comparing to the seller's current price."). "An opaque reference to a 'comparable value' does not meet this requirement." Order 5.

Eddie Bauer attempted to appeal this ruling—making the same arguments it makes here. Eddie Bauer was unsuccessful; the Ninth Circuit left the Court's ruling intact. Now that a different judge has been assigned to the case, Eddie Bauer asks the Court to reverse Judge Coughenour's previous ruling. *See* Mot. 22 n.7. Eddie Bauer's request must be denied under the "law of the case" doctrine.[9]

---

[8] Meanwhile, the law does not require Ms. Clark to guess what similar items Eddie Bauer purportedly chose. Moreover, this would be an impossible task if Ms. Clark's allegations are true because Eddie Bauer did <u>not</u> choose similar items to base its "Comparable Value" prices on. Instead, Eddie Bauer simply added this label to its same fictitious reference prices that it was using before.

[9] When the Court held that the UTPA requires Eddie Bauer to provide the origin of its

1   Under the "law of the case" doctrine, "a court is generally precluded from reconsidering

2 an issue that has already been decided by the same court, or a higher court in the identical

3 case." *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997). "The doctrine is not a

4 limitation on a tribunal's power, but rather a guide to discretion." *Id.* "A court may have

5 discretion to depart from the law of the case where: 1) the first decision was clearly erroneous;

6 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially

7 different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise

8 result." *Id.*

9   Eddie Bauer has not shown that any of these five circumstances exist here. The first

10 decision was not clearly erroneous—the UTPA unambiguously requires Eddie Bauer to provide

11 the origin of its reference prices. *See* ORS 646.883(1). There has been no intervening change in

12 the law. The evidence on remand is the exact same—Eddie Bauer has not presented evidence

13 that it now provides the origin of its reference prices. No other changed circumstances exist.

14 And no manifest injustice would result in continuing to recognize that Eddie Bauer's unlawful

15 conduct is still unlawful.

16   Because none of these circumstances exist, it would be an abuse of discretion if the

17 Court "refused to abide by its previous ruling." *United States v. Phillips*, 367 F.3d 846, 856

18 (9th Cir. 2004). Beyond this, the law of the case doctrine "recognize[s] that as a matter of

19 comity a successor judge should not lightly overturn decisions of his predecessors in a given

20 case." *Fagan v. City of Vineland*, 22 F.3d 1283, 1290 (3d Cir. 1994).

21

22

23

24

25 reference prices, it made a scrivener's error—the Court correctly stated the law but miscited the
statute. The Court cited ORS 646.885(2) instead of ORS 646.883(1). Eddie Bauer pounces on

26 this clerical error by saying that "Judge Coughenour previously held that 'Comparable Value'
pricing does not satisfy ORS 646.885(2)," and then arguing that it does comply with this

27 provision. Mot. 22 & n.7. But Eddie Bauer does not dispute Judge Coughenour's actual
holding: that Eddie Bauer fails to provide the origin of its reference prices as required by the

28 UTPA. Eddie Bauer cannot take advantage of an incorrect citation when the substance of Judge
Coughenour's holding explicitly and correctly reflects and quotes the UTPA's requirements.

**C.**    **Whether Ms. Clark Can Represent Class Members Who Purchased Products With A "Comparable Value" Tag Is A Question For Class Certification.**

Eddie Bauer argues that Ms. Clark has not suffered an injury stemming from its "Comparable Value" label, and thus, she "cannot represent a putative class whose injuries stem from" purchasing products with ticketed prices labeled "Comparable Value." Mot. 25. "The difficulty with Defendants' argument is that it conflates standing and class certification." *Melendres v. Arpaio*, 784 F.3d 1254, 1261 (9th Cir. 2015). "[A]ny issues regarding the relationship between the class representative and the passive class members—such as dissimilarity in injuries suffered—are relevant only to class certification, not to standing." *Id.* at 1262.

Recently, the Ninth Circuit addressed this same issue in the context of false discount advertising claims. In *Nunez v. Saks Incorporated*, the Ninth Circuit explained how the plaintiff had standing to pursue his individual claims and that "[t]he district court erred by concluding at the pleading stage that Nunez lacked standing to assert claims on behalf of putative class members. Because Nunez has demonstrated standing to pursue his individual claims, the district court should have deferred consideration of whether he was an adequate class representative until the class certification stage of proceedings." 771 F. App'x 401, 402 (9th Cir. 2019) (citing *Melendres*, 784 F.3d at 1261–62).

This Court rejected the same argument, explaining that it "raises the issue of whether named plaintiffs are adequate representatives of the claims of unnamed plaintiffs—a question for class certification, to be addressed at a later time." *Frame-Wilson v. Amazon.com, Inc.*, 664 F. Supp. 3d 1198, 1207 (W.D. Wash. 2023) (Jones, J.).

Eddie Bauer does not dispute that Ms. Clark has standing to bring a UTPA claim for her individual purchases. In light of *Melendres*, *Nunez*, and *Frame-Wilson*, the question of whether Ms. Clark may be allowed to represent a class that includes consumers who have suffered the same injury by a similar, but not identical, unlawful pricing practice should be determined at class certification rather than the pleading stage.

**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA  98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1

## CONCLUSION

2              For the reasons stated above, the Court should deny Eddie Bauer's motion to dismiss.

3

DATED this 27th day of May, 2024.

4

5      HATTIS & LUKACS

6      By: /s/ Che Corrington
       Che Corrington, WSBA No. 54241
7      che@hattislaw.com
       Daniel M. Hattis, WSBA No. 50428
8      dan@hattislaw.com
       Paul Karl Lukacs, WSBA No. 56093
9      pkl@hattislaw.com
       HATTIS & LUKACS
10     11711 SE 8th Street, Suite 120
       Bellevue, WA 98005
11     Tel: 425.233.8628
       Fax: 425.412.7171

12
       *Attorneys for Plaintiff Susan Clark*
13     *and the Proposed Class*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS FAC - 22
20-CV-1106-RAJ

**HATTIS & LUKACS**
11711 SE 8th Street, Suite 120
Bellevue, WA  98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1

## **CERTIFICATE OF WORD COUNT**

2          I certify that this memorandum contains 8,229 words, in compliance with the Local Civil

3   Rules.

4

5          DATED this 27ᵗʰ day of May, 2024.

6

7                                              */s/ Che Corrington*
                                             _____
8                                              Che Corrington, WSBA No. 54241

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28