HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SUSAN CLARK, for Herself and/or on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EDDIE BAUER LLC and SPARC GROUP LLC,<br><br>Defendants. | CASE NO. 2:20-cv-01106-RAJ<br><br>ORDER |

## I.    INTRODUCTION

THIS MATTER comes before the Court on Defendants Eddie Bauer LLC and SPARC Group LLC (collectively, "Eddie Bauer" or "Defendants")'s Motion to Dismiss. Dkt. # 46.[1]  Plaintiff Susan Clark ("Plaintiff") filed a Response, to which Defendants replied. Dkt. ## 47, 53.

For the reasons set forth below, the Court **DENIES** Defendants' Motion.

---

[1] SPARC Group LLC was the parent company of Eddie Bauer LLC. Dkt. # 42 at ¶¶ 12–13.  The Court's independent research reveals that Catalyst Brands LLC formed in 2025 following a merger between SPARC Group LLC and JCPenney.  For consistency, the Court maintains the original case caption.

ORDER - 1

## II. BACKGROUND

This is a putative class action arising out of alleged violations of Oregon's Unlawful Trade Practices Act ("UTPA"), Or. Rev. Stat. § 646.605 *et seq*. Plaintiff takes issue with Eddie Bauer's use of purportedly false and misleading tagged list prices, *i.e.*, reference prices, on the garments sold at Eddie Bauer's outlet stores (the "Outlet Stores") in Oregon. She asserts that the Outlet Stores perpetually sell clothing items at discounted prices and, as a result, the reference prices on the sales tags are inaccurate and deceiving, amounting to "a massive false discount advertising scheme." *See* Dkt. # 42 at ¶ 4.

Plaintiff purchased three garments at two Eddie Bauer Outlet Stores in Oregon. *Id.* at ¶¶ 58–79. On March 22, 2017, she bought a men's long sleeve fast fleece 1/4 zip pullover jacket and a women's Microlight down jacket ("Microlight jacket") at the Troutdale Outlet Store with tagged list prices of $39.99 and $99.99, respectively. *Id.* at ¶¶ 58–61. Both items were subject to a 50% discount at checkout. *Id.* at ¶¶ 60–61. She subsequently returned the Microlight jacket in April 2018 to the Woodburn Outlet Store and used the resulting $49.99 credit towards purchasing a "Stormdown" jacket with a ticketed list price of $199.00 and a tagged clearance price of $99.99. *Id.* at ¶¶ 60–76. Plaintiff states that Eddie Bauer "had *always* offered the Stormdown jacket at a price far less than $199.00 over the preceding 600 days." *Id.* at ¶ 78. Plaintiff notes that she reasonably relied on Eddie Bauer's material misrepresentations regarding the reference prices and advertised discounts for the three products, and had she "known the truth, she would not have purchased the products at the prices she paid." *Id.* at ¶¶ 82–83. Her Amended Complaint reflects that she learned of the supposed scheme on March 13, 2020, when she saw a class action lawsuit investigation advertisement online. *Id.* at ¶¶ 86–87.

Plaintiff filed her original Complaint on July 16, 2020, on behalf of herself and other similarly situated persons who purchased garments with misleading list prices at

Eddie Bauer's Outlet Stores in Oregon. Dkt. # 1. She brought a single claim under Oregon's UTPA, seeking money damages, equitable restitution, a permanent injunction, and the certification of a class action. *See id*. Another court in this District granted Defendants' Motion to Dismiss with prejudice, ruling that Plaintiff failed to plead that she suffered an "ascertainable loss of money or property" due to Defendants' unlawful trade practices, as required by § 646.638(1) of the UTPA. Dkt. # 27. The District Court also ruled that Plaintiff's claim was time-barred, reasoning that "[w]hile this deficiency could possibly be cured through an amended complaint," such an amended was futile because she did not suffer an ascertainable loss. *Id.* at 8–10. Finally, the District Court found that although Plaintiff could not proceed with her case, Eddie Bauer's policy change of using the phrase "comparable value" on its sales tags for garments as opposed to a reference price based on the garment's claimed fictitious full retail price violated the UTPA, as Eddie Bauer must provide the origin of any such reference price. *See id.* at 5-6 ("[a]n opaque reference to a "comparable value" does not meet this requirement. Nor does a reference on the tag to a comparable value, without support for its basis, reduce the injury Ms. Clark would suffer. An inflated reference price, regardless of the source, may still cause a consumer such as Ms. Clark confusion in that she may still believe she is getting a deal when, in fact, she is not.").

Plaintiff then appealed to the Ninth Circuit, which first certified to the Supreme Court of Oregon the question of whether a consumer suffers an ascertainable loss under the UTPA when the consumer purchased a product that she would not have purchased at that price but for a violation of the UTPA if the violation arises "from a representation about the product's price, comparative price, or price history, but not about the character or quality of the product itself." Dkt. # 31 at 2. The Supreme Court of Oregon answered in the affirmative and recognized Plaintiff's "purchase price theory," holding that "when

a person acts in response to the deception by spending money that the person would not otherwise have spent, the person has been injured to the extent of the purchase price as a result of that deception." *Clark v. Eddie Bauer, LLC*, 371 Or. 177, 198–99, 532 P.3d 880 (2023).

On January 17, 2024, the Ninth Circuit issued its Memorandum, in which it held that (1) Plaintiff has standing to assert her UTPA claim; (2) Plaintiff can seek injunctive relief against Eddie Bauer's ongoing falsely discounted prices, despite the new use of the term "comparable value"; (3) monetary damages for past harms is not an adequate legal remedy for Plaintiff's future harm; and (4) granting Plaintiff leave to amend her Complaint is appropriate so she can explain the circumstances associated with her discovery of Eddie Bauer's advertising scheme. *See generally* Dkt. # 33. Plaintiff proceeded to file her Amended Complaint, specifically referencing her unearthing of the advertising scheme in 2020 after finding the law firm's website describing Eddie Bauer's unlawful practices. Dkt. # 42 at ¶¶ 86–88.

Defendants' instant Motion seeks dismissal of the action, asserting that Plaintiff failed to file this lawsuit within the UTPA's one-year limitations period. Dkt. # 46 at 14–20. Alternatively, Defendants request that if the Court were to find the discovery rule permits Plaintiff's UTPA claim to proceed for past purchases, it should strike any claims as to "comparable value" because (1) the term is not deceptive and (2) the term did not cause her any injury. *Id.* at 20–26.

### III.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). The rule requires the court to assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). A court

"need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id.* at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A court typically cannot consider evidence beyond the four corners of the complaint, although it may rely on a document to which the complaint refers if the document is central to the party's claims and its authenticity is not in question. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may also consider evidence subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

### IV. DISCUSSION

**A.     Statute of Limitations and the Discovery Rule**

> *i.     Reasonably diligent inquiry*

Defendants reassert their argument that the statute of limitations prohibits Plaintiff from pleading her UTPA claim sufficiently, and the discovery rule does not apply, thus negating any potential tolling of the accrual date. Oregon's UTPA provides that a party must commence a lawsuit "within one year after the discovery of the unlawful method, act, or practice." Or. Rev. Stat. § 646.638(6). "The UTPA statute of limitations begins to run when the plaintiff knows or should have known of the allegedly unlawful conduct." *Morris v. Dental Care Today, P.C.*, 306 Or. App. 259, 261, 473 P.3d 1137 (2020). "The discovery rule applies an objective standard—how a reasonable person of ordinary prudence would have acted in the same or a similar situation." *Kaseberg v. Davis Wright Tremaine, LLP*, 351 Or. 270, 278, 265 P.3d 777 (2011). Oregon law provides a two-step

analysis for determining whether a plaintiff reasonably should have known of the claims asserted. First, a plaintiff must have had sufficient knowledge to "excite attention and put a party upon his guard or call for an inquiry notice." *Mathies v. Hoeck*, 284 Or. 539, 543, 588 P.2d 1 (1978). Second, if the plaintiff had such knowledge, "it must also appear that a reasonably diligent inquiry would disclose the fraud." *Id*. "Application of the discovery rule *presents a factual question for determination by a jury* unless the only conclusion that a jury could reach is that the plaintiff knew or should have known the critical facts at a specified time and did not file suit within the requisite time thereafter." *Kaseberg*, 351 Or. at 278 (emphasis added).

Defendants accurately state that if the discovery rule does not apply, Plaintiff must have filed her lawsuit by March 2018, one year after she bought two garments at the Troutdale Outlet Store. Dkt. # 46 at 16. Defendants claim that Plaintiff knew or should have known of her case well over one year before she sued in July 2020 because "her experience using the products that she bought . . . provided enough information for her to conclude before July 2019 that she had been misled as to the value of the items she purchased." *Id.* at 16–17. They also posit that when she bought the items, she knew the reference prices, and she "apparently used the products sufficiently to gauge their quality and value." *Id.* at 17–18. The Court finds Defendants' argument subjective and conclusory. Even before reading more of the Motion, the Court construed these statements as an implication that Plaintiff had an obligation to determine the value of the garments once she wore them. Indeed, Defendants affirm the Court's supposition when stating that consumers "determine the value of clothing simply by wearing it, which is what Plaintiff did for years." *Id.* at 18.

The Court adopts Plaintiff's reasoning and rejects Defendant's position. As Plaintiff correctly avers, "[t]he only way for a person to know that Eddie Bauer's

ORDER - 6

advertised discounts were false is for the person to know Eddie Bauer's true historical selling prices for the products he or she purchased." Dkt. # 47 at 12. The Court struggles to find a correlation between a consumer wearing an item of clothing and the same consumer somehow knowing the item's regular selling price or worth merely because she wears it. Defendants fail to buttress their unfounded theory with case law, and instead continue their speculation, concluding that "the only reasonable inference is that during the interregnum, she continued to shop and interact with people and media that could have informed her measure of value." Dkt. # 46 at 18–19. How do Defendants know this to be the case? Plaintiff's interactions with the garments and knowledge of the regular selling price are factual determinations requiring discovery. Plaintiff is correct in noting that if the Court were to grant Defendants' Motion on this ground, it would find as a matter of law that when a reasonable consumer wears an item, she learns facts that trigger suspicion of a discrepancy between a garment's ticketed price and its regular selling price. Doing so would contradict all principles of common sense. At this stage of the litigation, there is nothing to indicate that Plaintiff had sufficient knowledge to be put on inquiry notice of Defendants' pricing scheme.

    *ii. Duty to conduct an investigation*

  Another dispute arises regarding Plaintiff's alleged duty to conduct an investigation. Defendants state that under Federal Rule of Civil Procedure 9(b), a plaintiff alleging a purported fraud must specifically plead "facts to support application of the discovery rule," including an explanation for why the plaintiff did not discover the alleged fraud earlier. *Egbukichi v. Wells Fargo Bank, NA*, 184 F. Supp. 3d 971, 977–78 (D. Or. 2016). They further assert that if Plaintiff's experience using the products suggested that she had been misled as to their value, she had an obligation to take some steps to discover the allegedly unlawful conduct. Dkt. # 46 at 19. However, the case

cited by Defendants presents circumstances far different from the instant matter. In the cited case, the Oregon Court of Appeals held that the plaintiff could reasonably have talked to tenants of the mobile home park he purchased to reveal that the seller misrepresented a drainage problem in the purchase agreement. *See Kinyon v. Cardon*, 69 Or. App. 546, 550–52, 686 P.2d 1048 (1984). The Court cannot extrapolate a situation wherein a tenant, who lives in close proximity to and likely converses daily with his neighbors, likely would learn about a drainage issue to that of a consumer uncovering a pricing scheme by talking to her fellow consumers, to whom she has no relation.

As stated, *supra*, any argument that wearing the garments should have provided enough information to prompt an investigation lacks merit. The Court also rejects Defendants' claim that "Plaintiff could have simply asked Eddie Bauer for [price history] information." Dkt. # 46 at 19. First, Plaintiff had no idea Eddie Bauer was engaging in an unfair trade practice at the time. Second, there is no evidence to show that its employees would know or have access to this information. These two considerations also do not factor in the employee's state of mind, as an employee might be suspicious of such questions and feel obligated to protect her employer.

The Amended Complaint plainly outlines that a person sometimes cannot discover a false advertising scheme "because, by design, its very nature is hidden and impossible for an ordinary consumer to discover." Dkt. No. 42 at ¶ 142. The District of Oregon has already addressed the difficulty of attempting to discover an unknown, fraudulent practice. *See Mendoza v. Lithia Motors, Inc.*, No. 6:16-cv-01264-AA, 2017 WL 125018, at *3 (D. Or. Jan. 11, 2017) (finding that the discovery rule applied where the plaintiffs alleged that they could not have reasonably discovered the defendants' "kickback" scheme in retaining a percentage of the purchase price, which was a UTPA violation, because the defendants concealed the necessary information). A reasonable person under

the circumstances could not have conducted the type of investigation necessary to uncover Defendants' alleged violations. It was only after consulting the law firm's website in 2020 that Plaintiff learned of the pricing scheme. Dkt. No. 42 at ¶¶ 86–87. Accordingly, the Court **DENIES** Defendants' Motion, as the discovery rule extends the requisite statute of limitations, thereby making Plaintiff's lawsuit timely.[2]

B.  **References to "Comparable Value"**

*i.   Whether the phrase "Comparable Value" is deceptive*

In her Amended Complaint, Plaintiff seeks an injunction to the extent it would enjoin Eddie Bauer from using the phrase "Comparable Value" in its outlet stores. Conversely, Defendants aver that the Court should strike any references in the Amended Complaint to "Comparable Value." In their pleadings, the parties discuss whether the Federal Trade Commission guidelines or Oregon law applies. However, this is secondary when determining whether the phrase, *as used by Eddie Bauer in its Outlet Stores*, is inherently deceptive. Defendants' primary argument that reasonable consumers shopping in Eddie Bauer's outlet stores would not interpret "Comparable Value" to mean "Eddie Bauer's price for the identical item" is speculative and parallel. Plaintiff states that the issue not only concerns the former price itself, but also the *source* and *origin* of the former price. Dkt. # 47 at 20. The Court concurs with Plaintiff in finding that "[w]ithout identifying the comparable item, a consumer has no way of knowing if the price comparison is legitimate or a falsely inflated reference price." *Id*. Under Oregon's UTPA, Eddie Bauer has an obligation to provide the origin of a reference price. Or. Rev. Stat. § 646.885(2). It has not done so.

---

[2] The Court summarily rejects Defendants' argument regarding public policy considerations, as it is speculative of opposing counsel's motives and not supported by any authority. Defendants are attempting to impose a statute of limitations on opposing counsel, knowing they cannot do so on Plaintiff.

ORDER - 9

The most instructive case law on this issue derives from the original District Court ruling and that of the Ninth Circuit. In the prior Order, the District Court found the phrase "Comparable Value" deceptive, ruling that "[a]n opaque reference to a 'comparable value' does meet [the UTPA] requirement. Nor does a reference on the tag to a comparable value, without support for its basis, reduce the injury Ms. Clark would suffer. An inflated reference price, regardless of the source, may still cause a consumer such as Ms. Clark confusion in that she may still believe she is getting a deal when, in fact, she is not." Dkt. # 27 at 5–6. To cinch the matter, although the Ninth Circuit reversed the ruling on other grounds, it held that Plaintiff could seek injunctive relief against Eddie Bauer's falsely discounted prices, despite the new use of the term "comparable value." *See* Dkt. # 33 at 7 ("Clark *will continue to face the same prospective injury* of being unable to rely on the validity of the information advertised by Eddie Bauer") (internal quotation marks and citation omitted) (emphasis added). The Court will not deviate from prior reasoning addressing this issue, and it is bound by the Ninth Circuit. The language of the Ninth Circuit opinion indicates that Plaintiff can still pursue a claim for injunctive relief based on Eddie Bauer using the phrase "Comparable Value" on garments, which is deceptive under Oregon's UTPA.

        *ii.*     Standing

Defendants next argue that Plaintiff cannot pursue an injunction because she made her purchases before Eddie Bauer switched to implementing "Comparable Value" labels. Plaintiff does not dispute the timing of her purchases, but she claims she will continue to suffer harm based on the deceptive and false advertising. "A plaintiff threatened with future injury has standing to sue if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur. *In re Zappos.com, Inc.*, 888 F.3d 1020, 1026 (9th Cir. 2018). In 2017, the Ninth Circuit reversed and remanded a trial court's dismissal

ORDER - 10

of a putative class action complaint involving allegations of false advertising. *See generally Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018). The Ninth Circuit held that "misled consumers may properly allege a threat of imminent harm or actual harm sufficient to seek injunctive relief" as a means to curb companies from falsely advertising their products in the future. *See id.* at 961–62.

Here, the key part of the *Davidson* opinion is the conclusion that a "consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to" are sufficient to establish standing. *Id.* at 969–70. This directly comports with Plaintiff's allegations in her Amended Complaint, which provide that she "would shop at one of Eddie Bauer's Oregon Outlet Stores again or on the Outlet website if she could have confidence regarding the truth of Eddie Bauer's prices and the value of its products." Dkt. # 42 at ¶ 90. Such an allegation is enough to show standing and survive a motion to dismiss. Moreover, the Ninth Circuit also analyzed *Davidson* in relation to this case. *See* Dkt. # 33 at 5–6 ("[a]ccordingly, she will be harmed if, in the future, she is left to guess as to whether Eddie Bauer is providing a legitimate sale or not, and whether products are actually worth the amount that Eddie Bauer is representing") (internal quotation marks omitted); *cf. Davidson*, 889 F.3d at 969–70. Again, a higher court has already offered its analysis on an issue presently before the Court, and the Court finds that there is a causal link between Plaintiff's loss and Defendants' actions. Plaintiff has made allegations sufficient to demonstrate standing, and the Court accordingly **DENIES** Defendants' request to strike any references to "Comparable Value" in her Amended Complaint.

## V. CONCLUSION

Based on the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss. Dkt. # 46.

Dated this 12th day of March, 2025.

*Richard A. Jones*
The Honorable Richard A. Jones
United States District Judge

ORDER - 12